[No. 39635    Department One.    February 15, 1968.]

THE STATE OF WASHINGTON, *Petitioner*, v. IDA GOBIN *et al.*, *Respondents.**

*The Attorney General* and *C. E. Watts, Assistant,* for petitioner.

*LeSourd & Patten* and *George M. Hartung, Jr.,* for respondent Gull Oil Co.

ROSELLINI, J.—This court has issued a writ of certiorari to review an order of the trial court in this case, which granted a new trial if an additur should be refused by the petitioner.

*Reported in 437 P.2d 389.

The respondent, Gull Oil Company, is the owner of a 17,500 square foot tract of land located at the southeast corner of First Avenue South and Kenyon Street in Seattle, Washington. At the time of the acquisition which is the subject of this action, the property was improved with a gasoline service station facility.

On October 10, 1966, an order adjudicating public use was granted as to the entire 17,500 square foot parcel owned by the respondent, to permit the construction of secondary state highway No. 1-K, a limited access freeway connecting downtown Seattle with the Burien area south of Seattle. The entire parcel and the improvements were to be acquired.

Trial as to just compensation was originally set for January 18, 1967, in King County, but was continued to March 13, 1967. The respondent, by stipulated order, gave the petitioner immediate use and possession of the entire parcel. Also by stipulation, the respondents were to salvage and remove all improvements located upon the premises in consideration for which the sum of $1,025 was subtracted from the stipulated amount of the deposit for immediate use and possession of the entire parcel. Prior to trial the respondents did in fact remove all improvements from the property except for the outside walls of the service station itself.

The blanket condemnation action entitled *State v. Gobin*, King Co. Cause No. 666145, covered seven separate parcels under different ownerships. Item 7 was the subject of this action. At the same time trial of item 7 was continued to March 13, 1967, item 2 was similarly continued to the same date. Without objection on the part of the respondent, items 2 and 7 were tried to the same jury. Counsel representing interested parties in both items 2 and 7 were present for the selection of the jury. At no time either prior to or during the trial did any party object to the trial of items 2 and 7 successively to the same jury.

Trial of the issue of just compensation as to the above described property of the Gull Oil Company began on the

day following the jury's rendition of a verdict as to item 2.

The petitioner presented its witnesses who gave opinions as to value of the property, including improvements, which ranged from a figure of $80,500 to $86,572. The respondent's witnesses ascribed to it values ranging from $107,000 to $135,000.

The qualifications of the petitioner's witnesses were not objected to by the respondent. The respondent also voiced no exception to the court's instructions to the jury. A verdict was returned in the amount of $87,500, which, it will be observed, is greater than any value placed upon the property by the petitioner's witnesses but less than that ascribed by any of the respondent's witnesses.

Upon motion of the respondent, the trial court granted a new trial, conditioned on the refusal of an additur of $12,500. The petitioner applied for and was granted a writ of certiorari to review this order.

The first basis given by the trial court for its order was that the verdict was so inadequate as unmistakably to indicate the amount thereof must have been the result of passion and prejudice.

As the respondent points out, the trial court has a wide discretion in ruling on a motion for a new trial, and this court is especially reluctant to set such an order aside when it grants a new trial. *Barefield v. Barefield*, 69 Wn.2d 158, 417 P.2d 608, (1966). However, as we said in that case, the rule that such an order will not be disturbed in the absence of a manifest abuse of discretion applies only where controverted questions of fact are involved in the trial court's determination. This court is not so restricted in its review where only questions of law are involved.

It is true that the trial court was considering the evidence when it determined that the verdict was inadequate; but the question whether a new trial can be based on a finding of inadequacy of the verdict where the verdict is within the range of testimony is a legal question.

This court has held many times that if a case is sent to the jury upon proper legal rulings and instructions, a verdict of the jury which is within the range of credible

evidence presented cannot be deemed by the trial court to be the result of passion and prejudice. Stated another way, the rule is that the trial court cannot substitute its judgment for that of the jury where the case has gone to the jury on conflicting evidence and there is substantial evidence to sustain the verdict. Among the recent cases applying these rules are: *Lyster v. Metzger*, 68 Wn.2d 216, 412 P.2d 340 (1966); *Bunnell v. Barr*, 68 Wn.2d 771, 415 P.2d 640 (1966); *Worthington v. Caldwell*, 65 Wn.2d 269, 396 P.2d 797 (1964); *Durkan v. Leicester*, 62 Wn.2d 77, 381 P.2d 127 (1963); *Coleman v. George*, 62 Wn.2d 840, 384 P.2d 871 (1963); *Day v. Frazer*, 59 Wn.2d 659, 369 P.2d 859 (1962); *Ide v. Stoltenow*, 47 Wn.2d 847, 289 P.2d 1007 (1955).

The respondents do not contend that the alleged inadequacy of the verdict was attributable to any error occurring in the conduct of the trial or the giving of instructions. It seems manifest that the trial court and the respondent have simply disagreed with the jury's finding on the amount of compensation which is due the respondent.

A further basis for the order is found in the following language excerpted from the order:

> The jury hearing this matter also had heard and decided the Dahl item in the same cause immediately before the Gull item and the evidence presented in the preceding Dahl item prejudiced the jury toward Gull Oil Co. In the Dahl item there was extensive testimony that the threat of condemnation for several years in the area where the Dahl and Gull properties were located had served to depress the value of land in the area. Said testimony in the form and manner presented in the Dahl item was neither appropriate nor applicable to the Gull Oil Co. property, but nevertheless the jury took such testimony into account in valuing the Gull property. This action by the jury had the effect of denying to Gull Oil its constitutional guarantees in eminent domain proceedings.
>
> The Gull and Dahl properties were of a very dissimilar type, the Dahl property being suitable for industrial use, and the Gull property being suitable for use as a gasoline service station site. Extensive testimony in the Dahl case of square footage values of industrial property in the area where the Gull property was located was considered

and taken into account by the jury in its valuation of the Gull property. The testimony in the Gull item showed that its property as a gasoline service station site should be valued on a site basis. Gull Oil Co. was prejudiced by the jury's consideration of square footage values and the amount of the award to Gull was lessened by the consideration of square footage values.

The jury or at least certain of the jurors improperly assumed Gull had been permitted to retain various of the improvements upon its property. This assumption, for which there was no evidentiary basis, served to prejudice Gull Oil Co. and reduce the amount of the award to Gull Oil Co.

The facts set forth in this portion of the order were gleaned from affidavits of jurors. These affidavits did not show that any juror had taken evidence outside of the court or had engaged in any misconduct other than to consider evidence presented in another trial in reaching his verdict.

In *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651 (1962), this court said:

The crux of the problem is whether that to which the juror testifies (orally or by affidavit) in support of a motion for a new trial, inheres in the verdict. If it does, it may not be considered; if it does not, it may be considered by the court as outlined in *State v. Parker, supra.* One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him; if so, the statements cannot be considered for they inhere in the verdict and impeach it. If they do not, it then becomes a matter of law for the trial court to decide the effect the proved misconduct could have had upon the jury. Another test is whether that to which the juror testifies can be rebutted by other testimony without probing a juror's mental processes.

■ A more conspicuous case of the impeachment of a verdict by the affidavits of jurors would be difficult to imagine. As the order disclosed, the affidavits set forth the considerations which entered into their deliberations and controlled their actions in arriving at the verdict. They could not be rebutted without probing the mental processes of the jurors. Consequently they were improperly consid-

ered by the trial court in determining whether the respondent had a fair trial. *Coleman v. George, supra.*

> The trial court may receive and consider the affidavit of any person who is competent to make an affidavit in support of or against a motion for a new trial insofar as such affidavit shows facts in relation to misconduct of a juror; *but the court may not consider such affidavits as to those things which inhere in the verdict. Dibley v. Peters* (1939), 200 Wash. 100, 93 P. (2d) 720. *(State v. McKenzie,* 56 Wn.2d 897, 900, 355 P.2d 834 (1960))

The respondent cites *State v. Parker,* 25 Wash. 405, 65 Pac. 776 (1901) and *Gardner v. Malone, supra,* urging that they support the trial court's action in this case. In *State v. Parker, supra,* one of the jurors had stated on voir dire that he did not know the defendant, but after the jury retired to deliberate, he told the jurors that he knew the defendant was guilty, that he was a member of a gang of toughs, and that he was implicated in another killing. Injecting this "testimony" was misconduct on the part of the juror, and the trial court could, without reference to those portions of the juror's affidavit which discussed the effect which the statements had upon other members of the jury, decide what their probable effect was and conclude that it was prejudicial. Not only was the juror guilty of misconduct in advising the other jurors of matters within his personal knowledge which had not been brought out at the trial, but he was also guilty of misconduct in testifying falsely on his preliminary examination.

There is nothing in the affidavits filed in this case to show a similar misconduct, or any misconduct on the part of any juror, other than the misconduct of failing to follow the court's instructions and considering evidence dehors the record. It was the *consideration of other evidence* which constituted the misconduct and this cannot be shown by the affidavit of a juror.

Likewise, in *Gardner v. Malone, supra,* some of the jurors had taken an unauthorized view of the premises, the physical characteristics of which had changed since the accident which gave rise to the action. There was also a

showing that certain jurors *injected* matters outside the record into the jury's deliberations. There was no conduct of that kind in this case. All of the jurors had been exposed to the evidence in the preceding condemnation action. There has been no suggestion that it was improper to try the two cases to the same jury. Since both parties consented to this procedure, both were apparently willing to undertake the risk that evidence heard by the jurors in the first trial might affect their deliberations in the second.

By taking into account the matters set forth in the affidavits of the jurors and basing an order granting a new trial on these affidavits, the trial court permitted the jurors to impeach their own verdict. In so doing, the trial court erred. *Coleman v. George, supra; State v. McKenzie, supra; Dibley v. Peters,* 200 Wash. 100, 93 P.2d 720 (1939). As has been repeatedly said, if jurors were allowed to impeach their own verdicts by showing that they considered irrelevant or otherwise improper matters, no verdict would be secure. This and other factors supporting the policy are set forth in 8 Wigmore, Evidence § 2349, at 681 (McNaughton rev. 1961).

Inasmuch as the verdict rendered was within the range of credible testimony, and there has been brought to the attention of this court no error in the trial or valid basis upon which a new trial could be granted, the order must be reversed and the cause remanded with instructions to reinstate the verdict.

It is so ordered.

FINLEY, C. J., WEAVER and HALE, JJ., and WARD, J. Pro Tem., concur.