[No. 5278–1. Division One. May 15, 1978.]

G. WALTER GATES, ET AL, *Appellants*, v. CARL D. F. JENSEN, ET AL, *Respondents.*

82

*Helsell, Fetterman, Martin, Todd & Hokanson* and *Richard S. White,* for appellants.

*Williams, Lanza, Kastner & Gibbs, Henry E. Kastner,* and *Joel D. Cunningham,* for respondents.

RINGOLD, J.—In May 1972, the plaintiff Elisabeth Gates visited the defendant Eye Clinic where Drs. Charles Boylan, Wood Lyda, James Hargiss, Murray Johnstone, Carl Jensen, and Walter Petersen are associated in the practice of ophthalmology. She was suffering from failing eyesight and experiencing blurred vision. Dr. Hargiss at that time took her eye pressure with a Schiotz tonometer. The reading, 24 in each eye, was on the borderline of that which would indicate glaucoma. Dr. Hargiss examined Mrs. Gates' optic nerve with a direct ophthalmoscope and observed no abnormality. Her eyes were not dilated, nor was she given a visual field examination by the defendants.

For the ensuing 2 years, Mrs. Gates underwent treatment at the Eye Clinic. During a visit to the clinic in April 1974, Dr. Hargiss found the pressure in each eye to be high. On May 2, 1974, Dr. Hargiss found "arterial constriction of the vessels in the eye." Mrs. Gates was referred to the clinic expert on glaucoma and ischemic optic neuropathy (ION), Dr. Murray Johnstone. On May 6, 1974, Dr. Johnstone's impression was "open angle glaucoma with probable ION superimposed due to increased blood pressure."

After further treatment by the Eye Clinic, Mrs. Gates, in October 1974, came under the care of another ophthalmologist not connected with the defendant clinic. Surgery was performed on both eyes in February 1975, to create new drainage channels to permit the normal flow of eye fluid.

This action for medical malpractice was commenced by Mrs. Gates, claiming that the Eye Clinic doctors were negligent in failing to diagnose her eye condition as glaucoma. Mrs. Gates claimed that Dr. Hargiss' failure to diagnose her condition as glaucoma when he first saw her on May 16, 1972, was negligent; that proper practice would have required dilation of her eyes and a visual field examination, especially once the high pressure reading had been made; that glaucoma would have been diagnosed; and that proper treatment for glaucoma would have resulted.

The defendants challenged the plaintiff's basic assumption that Mrs. Gates' central visual loss is due to glaucoma. The defendants' evidence showed that her visual loss was caused by a stroke or a series of strokes which shut down the blood supply to plaintiff's optic nerve, causing death to a part of the nerve and consequent detriment to the plaintiff's vision, the condition known as ION. Trial resulted in a verdict for the defendants and this appeal followed.

Mrs. Gates assigns as error (1) the failure to give plaintiff's proposed instruction encompassing the theory of *Helling v. Carey*, 83 Wn.2d 514, 519 P.2d 981, 67 A.L.R.3d 175 (1974), (2) the trial court's failure to give plaintiff's proposed instruction on informed consent, (3) the denial of plaintiff's motion for new trial for alleged misconduct of the

jury, and (4) the refusal to admit into evidence opinions contained in the medical reports submitted by Drs. Maumenee and Shaffer.

We agree with the trial court and affirm.

### HELLING V. CAREY

Did the legislature decently inter the doctrine of *Helling v. Carey, supra*? The 1975 legislature adopted RCW 4.24-.290, providing:

> In any civil action for damages based on professional negligence against a hospital which is licensed by the state of Washington or against the personnel of any such hospital, or against a member of the healing arts including, but not limited to, a physician licensed under chapter 18.71 RCW, an osteopathic physician licensed under chapter 18.57 RCW, a chiropractor licensed under chapter 18.25 RCW, a dentist licensed under chapter 18.32 RCW, a podiatrist licensed under chapter 18.22 RCW, or a nurse licensed under chapters 18.78 or 18.88 RCW, the plaintiff in order to prevail shall be required to prove by a preponderance of the evidence that the defendant or defendants failed to exercise that degree of skill, care and learning possessed by other persons in the same profession and that as a proximate result of such failure the plaintiff suffered damages, but in no event shall the provisions of this section apply to an action based on the failure to obtain the informed consent of a patient.

The Supreme Court in *Helling* disregarded the testimony of the medical experts for the plaintiff and the defendant that the medical standards do not require routine pressure tests for glaucoma upon patients under 40 years of age. The court held that the failure to administer a pressure test to patients under 40 years of age constitutes negligence.

> We therefore hold, as a matter of law, that the reasonable standard that should have been followed under the undisputed facts of this case was the timely giving of this simple, harmless pressure test to this plaintiff and that, in failing to do so, the defendants were negligent, which proximately resulted in the blindness sustained by the plaintiff for which the defendants are liable.
>
> . . .

. . . the case is remanded for a new trial on the issue of damages only.

*Helling v. Carey, supra* at 519.

■ The plaintiff here contends that the borderline pressure reading required that the defendants administer a visual field test which would have shown open angle glaucoma, and that failure to do so constitutes negligence as a matter of law as in *Helling*.

The plaintiff contends that the doctrine in *Helling* is still extant. This is based primarily on a law review note appearing at 51 Wash. L. Rev. 167 (1975). The statute by its express terms clearly requires a departure from the standard of the profession to sustain recovery in a medical malpractice case. There is no question but that the legislature intended to reimpose this standard and to abolish the *Helling* rule, and we therefore so hold. The instruction was properly refused.

Before the adoption of the statute there were exceptions to the requirement that the plaintiff must prove that the defendant failed to adhere to the medical standard. None of these exceptions are applicable here. We express no opinion at this time as to whether by virtue of the adoption of the statute, the legislature intended also to eliminate the exceptions.

There was no error in refusing to give plaintiff's proposed instruction.

### INFORMED CONSENT

The doctrine of informed consent has been carefully and extensively analyzed since it was first adopted by the courts in this state. *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 499 P.2d 1, 52 A.L.R.3d 1067 (1972). The historic root and principles which it entails are well articulated in *Holt v. Nelson,* 11 Wn. App. 230, 523 P.2d 211, 69 A.L.R.3d 1235 (1974), and *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975). The evidentiary essentials for the submission of an

informed consent instruction in a medical malpractice case are set forth in *Miller* as follows:

An instruction outlining the elements of the negligence doctrine of "informed consent" should set forth that it is the duty of a physician or surgeon to disclose to a patient all relevant, material information the patient will need to make an informed decision on whether to consent to or reject the proposed treatment or operation. The jury should also be instructed that the plaintiff–patient must prove by a preponderance of the evidence that (1) the physician failed to inform the patient of a material risk involved in submitting to the proposed course of treatment; (2) the patient consented to the proposed treatment without being aware of or fully informed of the material risks of each choice of treatment and of no treatment at all; (3) a reasonable, prudent patient probably would not have consented to the treatment when informed of the material risks; and (4) the treatment chosen caused injury to the patient. It is also appropriate to instruct the jury that in the event a patient has consented to a proposed treatment or operation, a failure of the physician or surgeon to fully inform the patient of all of the material risks present in his medical situation before obtaining such consent is negligence; and a physician or surgeon is liable for any injury proximately resulting from the treatment if a reasonably prudent person in the patient's position would not have consented to the treatment if adequately informed of all the significant perils.

*Miller v. Kennedy, supra* at 289–90.

The doctrine of informed consent would require the physician, after a diagnosis, to inform the patient as to the alternative treatments available, the risk attendant to each as well as the risk attendant to no treatment at all. In *Miller* the doctor failed to advise the patient as to the risk that he would lose the kidney if the proposed biopsy were conducted. In *Holt* the physician failed to advise the patient that an alternative treatment to that which he followed was available. This case concerned the accuracy of the diagnosis in the first instance as opposed to the risks

attendant to the various courses of treatment for the diagnosed illness.

The doctrine of informed consent should not be enlarged so as to include problems of mistaken diagnosis. The claim of negligent conduct appropriately covers the fault of a mistaken diagnosis and is sufficient to afford a fair trial on the issue. On the basis of this very distinction the court in *Holt v. Nelson, supra,* considering the sufficiency of the proposed instruction, discussed the instances when disclosure of risk and consent to treatment are unnecessary. The court stated at page 241: "A doctor need not disclose a risk of the improper performance of an appropriate procedure. *Mallett v. Pirkey,* 171 Colo. 271, 466 P.2d 466 (1970); *Mull v. Emory Univ., Inc.,* 114 Ga. App. 63, 150 S.E.2d 276 (1966)." A physician then need not disclose a risk of making an erroneous diagnosis.

If the defendants were at fault in failing to perform the other tests, then their failure to adhere to the medical standard of care is available to provide the plaintiffs with a remedy. This was fully covered in the court's instruction:

> An ophthalmologist has a duty to perform whatever diagnostic procedures are necessary, according to the standards of his specialty, and to inform himself as to the fact and circumstances indicating the presence or absence of eye disease in his patient.

The trial court correctly refused to submit plaintiff's proposed instruction on informed consent.

## JURY MISCONDUCT

During deliberations there was discussion in the jury room to the effect that some of the jurors had been to ophthalmologists who did not dilate their eyes at all. Other jurors stated that their ophthalmologists did dilate their eyes.

The injection during jury deliberations of personal experience outside the record is misconduct. A verdict may be set aside for jury misconduct which does not "inhere in the verdict." *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d

651 (1962). Misconduct may be proved by jurors' affidavits which do not evidence their motives, intent, beliefs or mental processes, all of which have been held to "inhere in the verdict." *Gardner v. Malone, supra.* The misconduct here did not purport to reveal elements which inhere in the verdict. Before misconduct will be grounds for new trial, however, the question to be resolved by the trial court is whether it adversely affected the verdict. *Gardner v. Malone, supra; State v. Parker,* 25 Wash. 405, 65 P. 776 (1901). An appellate court will reverse a trial court's refusal to grant a new trial on that basis only when the trial court's assessment of the effect of the misconduct constitutes an abuse of discretion. *State v. Parker, supra; Gardner v. Malone, supra.*

Of the two plaintiff's experts who testified at the trial, one stated that he always dilates and the other did not testify as to that precise point, although it could be inferred that he would have dilated one in Mrs. Gates' circumstance. Among the defendant's experts, one testified that he dilates one–half of those in Mrs. Gates' age category. Another testified that he dilates everyone on the first visit, but went on to say that half the doctors in this area would dilate and half would not, depending upon whether or not they were able to get an adequate view of what they needed to see without dilating the pupil.

There is conflicting evidence in the record then, as to the standard of care on the question of dilation. The trial court concluded that the jurors' discussions did not adversely affect the verdict. We agree. There was no abuse of discretion by the trial court in its refusal to grant a new trial for jury misconduct.

### ADMISSIBILITY OF DR. MAUMENEE'S OPINION

In June 1974, Dr. Hargiss referred Mrs. Gates to Dr. Edward Maumenee, an ophthalmologist at Johns Hopkins University. Dr. Maumenee's report to Dr. Hargiss stated: "I think that her loss of visual fields is due to glaucoma. I would not think that this was ischemic optic atrophy."

Mrs. Gates then had a conference with Dr. Boylan, seeking clarification as to the difference between Dr. Maumenee's opinion that she had glaucoma and Dr. Johnstone's opinion that her condition was ION. She testified that in the course of the conference, Dr. Boylan stated: "You have glaucoma."

The trial court admitted Dr. Maumenee's report but excluded the portion containing his opinion quoted above.

The plaintiff claims as error the refusal by the trial court to admit into evidence Dr. Maumenee's opinion that Mrs. Gates was suffering from glaucoma. She argues that Dr. Boylan's remark to her constitutes "an adoptive admission thereby entitling all of Dr. Maumenee's report to be admitted into evidence." The trial court properly excluded Dr. Maumenee's opinion as an adoptive admission by Dr. Boylan. From the testimony no fair inference could be drawn that Dr. Boylan was adopting Dr. Maumenee's diagnosis. The direct admission by Dr. Boylan—"You have glaucoma"—was in evidence without regard to Dr. Maumenee's opinion.

Furthermore, Dr. Maumenee's opinion is included in full in evidence as part of the chart of another physician.

The trial court did not abuse its discretion in excising the opinion in Dr. Maumenee's report.

### ADMISSIBILITY OF DR. SHAFFER'S OPINION

The plaintiff attempted to introduce into evidence the medical reports of Dr. Shaffer, to whom Mrs. Gates' present ophthalmologist had referred her. The trial judge ruled that the facts contained in Dr. Shaffer's report were admissible. Mrs. Gates, however, contends that the court erred in excluding Dr. Shaffer's opinion that "[s]he must be considered an open angle glaucoma with very vulnerable nerves."

Dr. Coyle testified on behalf of the defendant Eye Clinic. He made a diagnosis of Mrs. Gates' condition from the reports of various ophthalmologists, including Dr. Shaffer and a survey of the literature, including a treatise coauthored by Dr. Shaffer.

■ The basic thrust of Gates' argument as to the admissibility of Dr. Shaffer's opinion from his report stems from the fact that Dr. Shaffer had coauthored an accepted treatise in the field of glaucoma. A treatise which is relied upon by an in-court declarant as authority may be used by opposing counsel in cross-examination. *Dinner v. Thorp,* 54 Wn.2d 90, 338 P.2d 137 (1959); *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964).

It does not follow that because of the coincidental fact that Dr. Shaffer had written an accepted treatise in the field of glaucoma that his opinion in a report made to another physician respecting the condition of a patient would justify admission of Dr. Shaffer's opinion into evidence.

Further, Dr. Coyle testified as to Dr. Shaffer's opinion in cross-examination as follows:

> The whole premise here (of Dr. Shaffer's opinion) is that the lady has visual field loss on the basis of chronic open angle glaucoma and that she should be on medication since I feel that she did not have chronic open angle glaucoma, the whole last paragraph dealing how to treat her, I disagree with that.

The trial court did not abuse its discretion in excluding Dr. Shaffer's opinion from the portions of the report in evidence.

The trial court is affirmed.

JAMES and ANDERSEN, JJ., concur.

Reconsideration denied June 13, 1978.

Review granted by Supreme Court December 1, 1978.