[No. 5669–1.   Division One.   December 4, 1978.]

WILLIAM J. ARTHUR, *Respondent,* v. WASHINGTON
IRON WORKS DIVISION OF FORMAC INTER-
NATIONAL, INC., *Appellant.*

NORTH–AMERICAN CIFAL EXPORT CORPORATION,
*Respondent,* v. FORMAC INTERNATIONAL
SALES CORPORATION, ET AL, *Appel-
lants,* SEATTLE STEVEDORE
COMPANY, *Respondent.*

*Elvidge, Veblen, Tewell, Bergmann & Thorpe, Stephen P. Larson,* and *Duane Tewell,* for appellants.

*McCutcheon, Groshong, Geisness & Day, James D. McCutcheon, Jr., Bogle & Gates, Thomas J. McKey, Jr., Richard A. Montgomery,* and *Madden & Poliak,* for respondents.

DORE, J.—Washington Iron Works Division of Formac International, Inc., Formac International Sales Corporation and Formac International, Inc. (Formac) appeal from an order granting a new trial because of juror misconduct.

## ISSUES

ISSUE 1: Did the trial court err in considering affidavits of the jurors in setting aside the verdict?

ISSUE 2: Do the affidavits support the trial court's finding that the jury foreman committed misconduct?

ISSUE 3: Was the misconduct so prejudicial as to result in denial of a fair trial?

ISSUE 4: May the affidavits of jurors be considered to set aside the verdict when the jury was polled and 12 jurors answered that the verdicts were the verdicts of the jury and 11 jurors stated their individual agreement with the verdicts?

ISSUE 5: Should the trial court's ruling on the liability of Washington Iron Works and/or Seattle Stevedore Company in favor of Cifal be binding on retrial?

## FACTS

This case arises out of an accident which occurred while a large piece of machinery manufactured by Formac was being loaded aboard a vessel for shipment from Seattle to Yugoslavia. The loading was being done by Seattle Stevedore Company under a contract with the owner of the machine, North–American Cifal Export Corporation (Cifal). William J. Arthur, a stevedore employed by Seattle Stevedore Company, was injured and the machine was damaged during the accident. In separate actions, Arthur sued Washington Iron Works and Cifal sued Formac and Seattle Stevedore Company. The cases were consolidated for trial. In the suit by Arthur, the jury returned a verdict in favor of Washington Iron Works. In the action concerning the damage to the machinery, the jury found in favor of Cifal against Seattle Stevedore Company only. Arthur, Cifal and Seattle Stevedore Company subsequently filed motions for a new trial based upon juror misconduct. Following the introduction of affidavits from various jurors, the trial court granted the motion for a new trial and entered the following findings of fact:

1. The jury foreman, Poppe, committed misconduct prejudicial to the moving parties in at least the following particulars:

(a) He examined the yellow pages of the Seattle telephone book with regard to marine engineers and thereby obtained evidence beyond any properly introduced, convincing the foreman of the standing and reputability of the witness Larry Glosten there listed as a marine engineer. The same listing showed the foreman that experts called on behalf of plaintiff Arthur (Hunter and Windsor) did not enjoy the same status because they were not there listed.

(b) The above mentioned independent research by the foreman was carried out by him between the time the jury was allowed to separate April 11, 1977 and the time

the jury returned to resume deliberations the following morning. At time of separation, and on repeated previous occasions, Mr. Poppe and all other jurors had been carefully admonished by the Court to avoid doing what the foreman thereafter did, intentionally, and in violation of the Court's admonition.

(c) After resumption of deliberations April 12, 1977, the foreman, Poppe, stated in the presence of other jurors his findings that Glosten was from a reputable firm thereby giving defendant Washington Iron a powerful assist by injecting such improperly obtained "evidence" into consideration of the matter.

(d) During the interval between separation of the jury and resumption of deliberations the following morning, foreman Poppe also went to the Seattle Library, Technology section in brazen violation of the Court's admonition and researched the question of rigging including whether handbooks existed which might have been available for use of stevedores. He ascertained there were at least two handbooks on these subjects entitled "The Rigger's Bible" and the "Rigger's Handbook." He examined at least one text to an extent the Court is not able to determine. However, the foreman's own efforts to explain his conduct, purpose and motive are not believable. There was at all times an issue in the case whether handbooks were available for use by stevedores, and witnesses on such subject had stated during trial that none were available, and they were obliged to proceed without such assistance, relying solely upon experience. On the morning of April 12th, after resumption of deliberations, the foreman related in the presence of other jurors the fact he had visited the library and researched the question of rigging and found two handbooks thereon, as stated by juror Sorenson in his affidavit of April 19, 1977, page 1, line 27 to 30. There is no other explanation for juror Sorenson's being aware of such facts seven (7) days before the affidavit of foreman Poppe was served and filed by defendant Washington Iron Works, April 26, 1977. Although other jurors stopped at some point Poppe's discussion of his research and results thereof, it was nevertheless a strong, improper influence upon the deliberations in that Poppe [had] convinced himself of the validity of this improperly obtained "evidence," and

at least some other jurors were thereafter aware the foreman had such additional convincing basis for his opinions about the matter beyond the evidence properly submitted.

. . .

(f) The Court's findings are further amplified by the Court's oral opinion of May 6, 1977, which is by this reference incorporated herein, including particularly that the misconduct of the jury foreman has caused the Court not a mere "doubt," nor only a "reasonable doubt," but instead, an enormous doubt that there was a fair trial.

## DECISION

ISSUE 1.

■ In *Ryan v. Westgard,* 12 Wn. App. 500, 503, 530 P.2d 687 (1975) we restated the rules concerning the granting of a new trial based upon a claim of juror misconduct:

In considering affidavits concerning jury misconduct filed following a verdict, those portions of the affidavits should be discarded which question or impute error to the verdict itself and only those *facts* should be considered which relate to juror misconduct which in all likelihood influenced the verdict. A juror's statements about the effect the remarks of other jurors had upon his thought processes in arriving at his verdict may not be considered to set aside that verdict, but statements of fact about the misconduct of other jurors should be examined to determine if the misconduct was an element relied upon by the jury in its considerations.

(Italics ours.) *See Kellerher v. Porter,* 29 Wn.2d 650, 189 P.2d 223 (1948); *State v. Parker,* 25 Wash. 405, 65 P. 776 (1901). Here, affidavits of three jurors were filed in support of the motion for a new trial. These affidavits relate to "facts" and, therefore, were properly considered in determining whether there was juror misconduct.

ISSUE 2.

■ Formac next contends that the affidavits do not support the trial court's finding that the jury foreman committed misconduct. We disagree. The trial court could find from the affidavits of the jurors that the jury foreman, by going to the public library and looking for handbooks on

riggings and then relating to the other jurors that books were available, and by examining the yellow pages of the telephone book concerning marine engineers, committed misconduct because he placed "before his fellow jurors evidence which [was] not subject to objection, cross-examination, explanation or rebuttal." *Ryan v. Westgard, supra* at 503. *See Gates v. Jensen,* 20 Wn. App. 81, 579 P.2d 374 (1978).

ISSUE 3.

█ Formac next contends that even if the jury foreman committed misconduct, the trial court erred in finding that the misconduct was prejudicial. In *Ryan v. Westgard, supra* at 504, we stated:

> The analysis of affidavits concerning jury misconduct and the resolution of the effect of juror discussion of matters outside the record is the province of the trial judge. As stated in [*Halverson v. Anderson,* 82 Wn.2d 746, 513 P.2d 827 (1973)] on page 752:
>> The effect which this evidence may have had upon the jury was a question which was properly determined in the sound discretion of the trial court which had observed all the witnesses in the trial proceedings and had in mind the evidence which had been presented. *If the trial court had any doubt that the misconduct affected the verdict, it was obliged to resolve that doubt in favor of granting a new trial.*

(Italics ours.) Here, the trial judge stated in her oral opinion, which was incorporated into the findings, that she had more than a "doubt" that the misconduct resulted in the denial of a fair trial:

> The great bulk of expert testimony in this case being what it was, largely a degree of differing opinions between the experts' ascertation of the facts. That somebody might be listed in a specific category of a phone book gives him *extra status* I think is a very plausible explanation of what might have happened. That was a logical inference one can draw from looking through the phone book.
>
> The other experts that testified on behalf of the prejudiced parties, that is, Mr. Arthur and Seattle Stevedore,

were not listed and certainly their omission from the category as specialist or expert in a particular area could be considered by the jury.

. . .

. . . Mr. Poppe goes and looks at the rigging handbooks and looks for rigging handbooks in the library. Now, what exactly he found there was, in fact, an issue in the trial. Whether or not rigging information was available was asked virtually every one of the people that were called by either side; what kind of information is available, have you ever taken a class, have you ever read a book? This was asked of numerous witnesses that testified; particularly of riggers, *the men actually down on the docks and their credibility is,* as well as the reliability or responsibility to the defendants, *definitely was an issue.* All of them, at least, to the best of my recollection, most of them indicated that, "no, there was no such books available", not that they knew of anyway, and that they just learned it by the school of hard knocks and experience.

. . .

The next question we have to arrive at is given the misconduct of the jury, specifically of Mr. Poppe, has this affected materially or substantially, or whatever the test should be, the rights of the prejudiced parties, Mr. Arthur–Seattle Stevedore. . . . It is obviously somewhere past possibility, a possibility of prejudice, in the area of probability and I think the expression I like best is the original one; that is, reasonable doubt. In effect, as within my discretion based on my recollection of the trial.

My recollection of the testimony, of the cautionary instructions plus the information provided by affidavits, do I as finder of fact in effect in this matter have a reasonable doubt so that Mr. Arthur and Seattle Stevedore were deprived of a fair and impartial trial due to the acts of misconduct?

. . .

. . . *I believe I have an enormous doubt, let alone a reasonable one; that the trial was unfairly influenced by the acts of Mr. Poppe; that these acts were communicated to the jury; and that as a result, a fair, impartial verdict was not arrived at.* Therefore, I will grant the motion for a new trial.

(Italics ours.) The granting of a new trial is a matter within the discretion of the trial court. *State v. Gobin,* 73 Wn.2d 206, 437 P.2d 389 (1968); *Bohnsack v. Kirkham,* 72 Wn.2d 183, 432 P.2d 554 (1967); *Gates v. Jensen, supra.* We find that the trial court's decision finding prejudice because the telephone directory incident gave "extra status" to Formac's expert, and that the library incident affected the credibility of the stevedores, was well reasoned. The record clearly indicates that the jurors specifically determined the credibility of the various witnesses. In resolving credibility, matters not in the record were undoubtedly utilized. To insure an effective jury trial, the type of misconduct that occurred in this case cannot be approved or ratified, but must be rejected in its entirety. We find no abuse of discretion in granting a new trial because of the misconduct.[1]

ISSUE 4.

[4] Formac finally contends that the affidavits of the jurors cannot be considered as a basis to vacate the jury's verdict and to grant a new trial when the jury is polled and "eleven jurors answer that these are their individual verdicts and the verdict of the jury, [and] one juror answers that these are not his individual verdicts, but the verdicts of the jury." Formac relies upon *Hamilton v. Snyder,* 182 Wash. 688, 48 P.2d 245 (1935) where the misconduct consisted of an attempt by the jury foreman to dominate. The court held that when the jury returned to the presence of the courtroom and were polled, the domination ceased. Here, the misconduct was not an attempt to dominate and, accordingly, *Hamilton* is distinguishable. We find no error in the trial court's considering affidavits of the jurors subsequent to their being polled.

ISSUE 5.

The final issue concerns respondent Cifal's contention that the trial court's ruling on the liability of Washington

---

[1]Since we find that the trial court did not abuse its discretion in granting a new trial based upon juror misconduct, we need not reach the issue of whether it was proper to grant a new trial because of bias and prejudice.

Iron Works and/or Seattle Stevedore Company is binding on retrial. The trial court instructed the jury:

> You are directed to return a verdict in favor of plaintiff NACE [Cifal] in the amount of $111,587. It is for the jury to determine if:
> (1) Defendant Washington Iron is solely liable.
> (2) Defendant Seattle Stevedore is solely liable.
> (3) Both defendants are liable. In this event, you must determine the partial liability of each; to total $111,587.

Instruction No. 12. The jury was further instructed in instructions Nos. 14 and 15 concerning the issue of indemnity between Formac and Seattle Stevedore Company. Pursuant to these instructions, the jury returned a verdict in favor of Cifal against Seattle Stevedore Company only. Cifal, although having been awarded a judgment against Seattle Stevedore Company, joined in the motion for a new trial based upon juror misconduct. Cifal stated in its motion, however, that it did not move for a new trial on the issue already determined concerning the liability of Formac and/or Seattle Stevedore Company. The record indicates that the trial court specifically deleted that conclusion of law which would have determined that all of the court's instructions to which no exception was taken should stand upon retrial. Cifal has not cross-appealed from the order granting the new trial and, therefore, the issue of whether the court's instructions should stand upon retrial cannot be raised on appeal.

Affirmed.

CALLOW, J., concurs.

ANDERSEN, A.C.J. (concurring in the result)—I agree that there was substantial evidence to support the "enormous doubt" of the trial judge that parties Arthur and Seattle Stevedore were given a fair and impartial trial. As to issue No. 5, the trial court was in the best position to determine

whether all issues, legal as well as factual, should be retried, and from the record presented I see no abuse of discretion.

Reconsideration denied February 14, 1979.

Review denied by Supreme Court May 25, 1979.