No.   91-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

MICHAEL BROCKIE, as Personal
Representative of the Estate
of ARIC C. BROCKIE, Deceased,

        Plaintiff and Appellant,

    -vs-

OMO CONSTRUCTION, INC.,

        Defendant and Respondent.


APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Kurt M.  Jackson,  Hoyt  and  Blewett,  Great  Falls,
            Montana

        For Respondent:

            Michael J.  Milodragovich  and  Margaret  L.  Sanner,
            Milodragovich, Dale and Dye, Missoula, Montana

FILED

DEC 16 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

                            Submitted on Briefs:   June 11, 1992

                                      Decided:   December 16, 1992

                            _____
                                            Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Michael Brockie, personal representative of the estate of Aric C. Brockie, appeals from an order of the First Judicial District, Lewis and Clark County, denying his motion for a new trial. We affirm in part and reverse in part.

The following issues are presented on appeal:

1. Whether the District Court erred in denying Brockie's motion for a new trial;

2. Whether the District Court erred in refusing to instruct the jury that Omo Construction, Inc.'s violation of the Manual on Uniform Traffic Control Devices constituted negligence as a matter of law;

3. Whether the District Court erred in refusing to instruct the jury that mere compliance with traffic regulations does not necessarily constitute due care; and

4. Whether the District Court erred in excluding certain impeachment evidence and by admitting certain prejudicial evidence.

On November 26, 1989, Aric Brockie was killed in a one car accident on I-94 near the Huntley Interchange east of Billings. Aric Brockie was the passenger in a vehicle driven by a friend. The two were returning to Billings after a Thanksgiving holiday in Miles City. The vehicle skidded as it approached an icy bridge. The car slid off the highway into the median where it struck a flasher board owned by Omo Construction, Inc. (Omo).

Omo was performing traffic control and guardrail work on I-94 as part of a construction contract with the State Highway

2

Department. On Wednesday, November 22, 1989, Omo had installed a new guardrail and median hazard closures on a bridge structure. In order to erect the guardrail on the median sides of the bridge, the crew was required to close the passing lane of the interstate in each direction of travel. Omo erected a number of advance warning signs for each lane plus two portable "arrow boards" or "flasher boards" which directed traffic with flashing arrows.

At the end of the day, on Wednesday, November 22, 1989, the foreman on the project directed worker Michael Stookey to remove the equipment from the highway and store it for the Thanksgiving holiday. Stookey removed the advance warning signs to a location east of the bridge next to the highway right-of-way fence. He pulled other signs to the parking lot of the Longhorn Cafe. Upon instructions from the foreman he placed the flasher boards in the middle of the median at either end of the bridge.

Highway Patrol Officer Virginia Kinsey drove past the area several times during her shift on November 26, 1989. She testified that she had the authority to have construction equipment removed if it was hazardous to the public. She saw the flasher board and did not believe it was in a hazardous area. Officer Kinsey responded to the Brockie accident and along with two other officers, made measurements at the scene. She testified that the flasher board was 27 feet 2 inches from the yellow median strip of the westbound lane at the time of impact. Traffic control provisions of the contract required compliance with highway safety

standards. A "30 foot clear" zone requirement prohibits storage of a traffic control device within 30 feet of the traveled highway.

Omo's expert, Dr. Thomas Blotter, an accident reconstruction expert, opined that the flasher board was parked between 34 and 48 feet from the westbound lane at the time of impact. Dr. Blotter testified at trial, basing his analysis on motion theory and kinematics. Since Brockie did not put an expert on the stand, Dr. Blotter's testimony went uncontroverted.

Francis H. Rice, the jury foreman, after the close of the evidence, went to the library of Carroll College to do some research about Dr. Blotter's testimony. Rice had taken some physics courses in college, and by affidavit, stated he wished to refresh his memory about physics principles concerning kinematic theory and motion theory. He stated his research clarified the testimony of Dr. Blotter. Rice stated that he mentioned to only one other juror that over the weekend he had done some research into kinematic theory and motion theory. However, affidavits of two separate jurors stated Rice mentioned his research to them in the jury room. By affidavit Rice stated he did not mention his research during deliberations.

Brockie's counsel, upon hearing that Rice had done some independent research, filed a motion for a new trial with the District Court. The District Court denied Brockie's motion . This appeal followed. Our standard of review is whether or not the District Court abused its discretion in denying Brockie's motion

4

for a new trial and ruling on evidentiary matters. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

I

Whether the District Court erred in denying Brockie's motion for a new trial.

The District Court found that the actions of Mr. Rice amounted to jury misconduct. However, relying on Arthur v. Washington Iron Works (1978), 22 Wash.App. 61, 587 P.2d 626, the District Court found that Rice's conduct was not prejudicial to Brockie. In Arthur, the jury foreman went to the public library and looked for handbooks on rigging and informed the other jurors they were available. He also examined the yellow pages to see if the experts who testified were listed. Arthur, 587 P.2d at 628. The court of appeals upheld the trial court's determination that the library incident went to the credibility of the witness and that the telephone directory incident gave extra status to the expert listed. Arthur, 587 P.2d at 631.

Generally, courts in both civil and criminal cases have held that to warrant a new trial, the misconduct must be such that actual or potential injury results to the losing party. Section 25-11-102, MCA, governs grounds for a new trial. It provides in part:

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party;
>
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of

5

> the court or abuse of discretion by which either party was prevented from having a fair trial.
>
> (2) misconduct of jury. Whenever any one or more of the jurors have been induced to assent to any general or special verdict or to a finding on any question submitted to them by the court by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.

See also Rule 606, M.R. Evid.

We agree with the District Court that the actions of juror Rice constituted jury misconduct, as shown by his affidavit, and the affidavit of two other jurors. The question before us remains whether actual or potential injury to Brockie resulted from Rice's conduct, and denied Brockie a fair trial. We have said in Putro v. Baker & Mannix Electric, Inc. (1966), 147 Mont. 139, 410 P.2d 717, that the "guiding principle in our legal system is fairness" and that both sides of the lawsuit are entitled to a fair trial. Putro at 147, 410 P.2d at 722. We went on to state that there is no practical method to determine whether the outcome would be different had the misconduct not occurred. We said: "The trial court should have declared a mistrial in justice to itself as well as to parties, so that a fair trial may result and the verdict when rendered may be entitled to the respect of both parties and the confidence of the court." Putro at 148, 410 P.2d at 722.

In Putro a newspaper article disclosed that the defendant plead guilty to manslaughter, in a related criminal case, as a result of the accident in question. One of the jurors clipped the article and brought it into the jury room. The jurors stated that

6

the article did not influence their verdict. Further, two of the jurors stated that they dropped the subject because they did not think they should read the article. We held that the possibility of influence existed, and probable prejudice resulted. Putro at 149, 410 P.2d at 723.

In Ahmann v. American Fed. Sav. & Loan Ass'n (1988), 235 Mont. 184, 766 P.2d 853, we held that any influence the alleged remark of the bailiff may have had on the jury did not affect the rights of the Ahmanns, and affirmed the District Court's denial of Ahmann's motion for a new trial. In Ahmann the jurors raised a question for the judge. The bailiff said the judge wouldn't answer it until after the trial. However, he did not preclude the jurors from pursuing the matter. Ahmann at 191, 766 P.2d at 857.

In the present case, Omo presented the expert testimony of Dr. Blotter at the trial. Dr. Blotter testified to the theory of kinematics and motion theory in relation to the location of the flasher board at the time of impact. Dr. Blotter's testimony was not contested or controverted by an expert, but was contested by the testimony of highway patrolman Kinsey. The location of the flasher board was at the very heart of the evidence. Francis Rice by affidavit, related that he went to the Carroll College library to research the theory of kinematics and motion theory and it clarified Dr. Blotter's testimony. Affidavits of two other jurors confirmed he had mentioned this to them in the jury room. Probable prejudice resulted from Rice's misconduct. Rice's independent alleged clarification of Dr. Blotter's testimony affected the

7

rights of Brockie for any statements by Rice in the jury room relative to the placement and positions of the sign, could in effect make Rice a witness as to those jurors to whom he mentioned his research.

We conclude the District Court abused its discretion in denying Brockie's motion for a new trial. Because we remand for a new trial, the balance of the issues are instructive only.

II

Whether the District Court erred in refusing to instruct the jury that Omo Construction, Inc.'s violation of the Manual on Uniform Traffic Control Devices constituted negligence as a matter of law.

The District Court refused Brockie's jury instruction that a violation of the Manual on Uniform Traffic Control Devices (MUTCD) is negligence per se. In 1955 the legislature authorized the State Highway Department to adopt a manual on traffic control devices. The State Highway Commission adopted the MUTCD in 1971. In 1981 the legislature amended § 61-8-202, MCA, to clarify which traffic control manual the highway department should adopt. The statute now states: "The department of transportation shall adopt a manual for a uniform system of traffic-control devices . . ." Section 61-8-202, MCA. If the legislature mandates a department to adopt rules but does not act further to adopt the rules, the rules do not become part of a statute by reference. Cash v. Otis Elevator Co. (1984), 210 Mont. 319, 326, 684 P.2d 1041, 1045. Here, the MUTCD is not incorporated by reference. The MUTCD is not a statute but

8

an administrative regulation. Violation of the MUTCD is not negligence per se but evidence of negligence. See Williams v. Maley (1967), 150 Mont. 261, 434 P.2d 398, Herbst v. Miller (1992), ___ Mont. ___, 830 P.2d 1268.

We conclude that the District Court did not err in denying Brockie's proposed instruction that a violation of the MUTCD was negligence per se.

III

Whether the District Court erred in refusing to instruct the jury that mere compliance with the traffic control regulations does not necessarily constitute due care.

The District Court refused Brockie's instruction number 44. Instruction 44 Provided:

> If you find that defendant OMO Construction, Inc. placed the arrow board more than thirty (30) feet from any traffic lane, you are instructed that defendant Omo Construction, Inc. was still required to comply with the provisions of its contract including the requirements of the MUTCD.

Brockie argues that the District Court's refusal of this instruction encouraged the jury to conclude that mere compliance with the 30 foot clear zone constituted due care. The District Court also refused Brockie's No. 17 which instructed the jury that Omo had a duty to remove obstacles which may constitute an unreasonable danger to motor vehicles and a violation of that duty is evidence of negligence.

However, the District Court provided the jury with proposed instructions 42 and 45 which provide respectively:

9

Ordinary care is not an absolute term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances, as shown by the evidence in the case.

INSTRUCTION NO. 45

On December 1, 1971, the Manual on Uniform Traffic Control Devices (MUTCD), was adopted by the Montana Highway Commission as a standard or norm to be used for traffic control devices.

Pursuant to the contract signed by the defendant Omo Construction, Inc., it was required to comply with the requirements of the MUTCD. If you find that defendant Omo Construction, Inc. violated any of the provisions of the MUTCD, you may consider such violation as evidence of Omo's negligence in this case.

We conclude that the District Court's instructions properly instructed the jury. Therefore the District Court did not err in refusing Brockie's proposed instructions.

IV

Whether the District Court erred in excluding certain impeachment evidence and by admitting certain prejudicial evidence.

The District Court granted Omo's motion in limine preventing Mr. Charlton, a retired Project Manager for the Highway Department, from testifying on certain matters. On the Monday following the accident, Mr. Charlton visited the accident scene and made some measurements of highway equipment stored by Omo. When Mr. Charlton arrived at the site, the flasher board in question had already been removed. He made measurements of the other flasher board on the

other side of the bridge and equipment some distance from the accident site. The District Court ruled that only evidence concerning the accident would be relevant.

On direct examination, Mr. Charlton testified that for safety's sake, obstructions should be completely removed from the median. On cross examination, Mr. Charlton testified that the other flasher board parked in the median on the other side of the bridge was outside the clear zone and in conformity with the requirements of the State of Montana. The District Court did not allow redirect examination about equipment unrelated to the accident, placed some two miles from the accident site.

Brockie sought to 'impeach' Mr. Charlton through testimony that this other equipment, although in compliance with the clear zone, should be removed for safety reasons. Impeachment is typically used to test the veracity of a witness. On direct examination, Mr. Charlton testified that obstructions should be removed for the sake of safety. However, he admitted on cross that the other flasher board conformed with State requirements. Any testimony stating that equipment two miles from the accident site should have been removed for safety's sake would not be proper impeachment. The placement of the equipment two miles from the accident site is irrelevant, thus testimony regarding this equipment would not be proper impeachment.

Brockie argues that Mr. Charlton's testimony that the flasher board on the other side of the bridge was in the clear zone and in conformity with the requirements of the State of Montana was

11

prejudicial based on Rule 403, M.R.Evid. Rule 403 excludes evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Because Mr. Charlton testified that any obstructions should be removed for the sake of safety, we do not find this testimony prejudicial.

We conclude that the District Court did not err in refusing Mr. Charlton's testimony regarding the other equipment.

For the reasons set forth above, we reverse and remand to the District Court for proceeding not inconsistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Justice Terry N. Trieweiler specially concurring and dissenting.

I concur with the majority's conclusion under Issue I that Michael Brockie is entitled to a new trial, based upon misconduct of the juror, Francis Rice.

I also concur with the majority's conclusion under Issue IV that the District Court did not abuse its discretion by limiting the redirect examination of Robert Charlton. However, I do not agree with all that is said in the majority's rationale for that conclusion. Specifically, I do not agree that the questions posed to Charlton on redirect examination were improper for purposes of impeachment. However, I do agree that the District Court has broad discretion when it rules on the propriety of cross-examination or redirect examination. In this case, I agree that that discretion was not abused.

I dissent from the majority's conclusions under Issues II and III which relate to the District Court's jury instructions.

I conclude that based on our prior case law, and based upon the better public policy, the jury should have been instructed that a violation of the Manual on Uniform Traffic Control Devices is negligence as a matter of law.

While the majority relies on our prior decisions in *Cash v. Otis Elevator Company* (1984), 210 Mont. 319, 684 P.2d 1041, and *Williams v. Maley* (1967), 150 Mont. 261, 434 P.2d 398, I conclude that our decision in *Martel v. Montana Power Company* (1988), 231 Mont. 96, 752 P.2d 140, is controlling.

13

The *Williams* decision is not relevant to our conclusion on this issue because it was decided in 1967, and as pointed out by the majority, the statute upon which it relied was materially amended in 1981. At the time that *Williams* was decided, § 32-2134, R.C.M. (now § 61-8-202, MCA), made no reference to the Manual on Uniform Traffic Control Devices. Therefore, the Highway Commission had no direct mandate from the legislature to consider or adopt that manual. The majority opinion points out that that section was amended in 1981. However, when quoting the statute, the majority fails to include the amended portion. Significantly to our decision, the full statute now reads as follows:

> The department of transportation shall adopt a manual for a uniform system of traffic-control devices consistent with this chapter for use upon highways within the state. <u>This uniform system shall correlate with and so far as possible conform to the manual on uniform traffic control devices, as amended.</u> [Emphasis added.]

Section 61-8-202, MCA.

In other words, at the time that *Williams* was decided, the statute which authorized the Highway Commission to adopt a manual for uniform signing of highways made no specific reference to the MUTCD. At all times relevant to this action, the statute in question mandated that the Department of Transportation adopt a manual and that it conform as closely as possible to the MUTCD.

The correct analysis under our case law regarding when the violation of national standards, such as the MUTCD, constitutes negligence per se is found in *Herbst v. Miller* (Mont. 1992), 830 P.2d 1268, 49 St. Rep. 40. In that case, we gave the following

14

explanation of the legal effect of national standards which have been adopted in Montana:

> We have held that violation of an administrative rule adopted under § 50-60-203, MCA, as in the instant case, is not negligence per se but instead is evidence of negligence. *Cash v. Otis Elevator Company* (1984), 210 Mont. 319, 684 P.2d 1041. In *Otis*, we recognize that § 50-60-203, MCA, mandates the Department of Commerce to adopt rules but that the legislature did not act further to incorporate by reference the rules adopted by the agency. In contrast, we held that violation of a national standard adopted by specific statutory reference is negligence as a matter of law. *Martel v. Montana Power Company* (1988), 231 Mont. 96, 752 P.2d 140. . . .
>
> . . . The Town of Belgrade adopted a resolution whereby the UBC [Uniform Building Code] is incorporated by reference. . . .
>
> . . . Miller's failure to install a handrail leading to the basement apartment is a failure to maintain her building in adherence with the ordinance and is therefore a violation of the ordinance. It is long settled that violation of a city ordinance constitutes negligence per se. *Marsh v. Ayers* (1927), 80 Mont. 401, 260 P. 702.

*Herbst*, 830 P.2d at 1271.

The Town of Belgrade adopted the Uniform Building Code by reference, and therefore, we found that violation of the building code was negligence per se.

The Montana Legislature mandated that the Department of Transportation "adopt a manual for a uniform system of traffic-control devices," and that so far as possible it conform to the "manual on uniform traffic control devices, as amended." Section 61-8-202, MCA. From that point on, the MUTCD was clearly "a national standard adopted by specific statutory reference." I fail to see any practical difference between the circumstances in

15

this case, and the circumstances in *Herbst* or *Martel*. Furthermore, I fail to see any justification from a public policy point of view for giving greater legal significance to the Uniform Building Code or the National Electric Safety Code, than the Manual on Uniform Traffic Control Devices. As a practical matter, they are all part of the law of the State of Montana. They were all enacted to protect the public and make Montana a safer place to live, and the violation of one creates just as much potential for danger as the violation of another. The majority opinion constructs intellectual distinctions which make no practical difference, and which are neither supported by our prior case law nor common sense. It does nothing to further the historical purposes of the law of negligence.

Finally, I dissent from the majority opinion because I disagree with this Court's conclusion, which had its genesis in *Stepanek v. Kober Construction* (1981), 191 Mont. 430, 625 P.2d 51, that there is any rational basis for treating the violation of a statute any differently than the violation of a lawfully enacted safety regulation. Both the statute and the safety regulation have the same purpose. Both are enacted for the public's protection, and presuming that proper procedures were followed, both are equally enforceable in the event of their violation. When it comes to determining whether one or the other can be used as a threshold standard by which to evaluate the exercise of reasonable care, what reason is there to treat one differently than the other?

16

Safety regulations are adopted by the various state agencies, or adopted pursuant to notice to interested parties. They are enacted to further a legislative purpose for which that agency was established, and they presumably establish standards of reasonable conduct in the industry or area of activity with which they are concerned. Therefore, when it comes to a conclusion about whether a violation of the law amounts to negligence per se, I would draw no distinction between violations of statutory law and violations of regulatory law.

For these reasons, I conclude that the jury was instructed improperly and dissent from that part of the majority opinion which concludes otherwise.

_____
Justice

Justice William E. Hunt, Sr., concurs in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice

17

December 16, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kurt M. Jackson
Hoyt & Blewett
P.O. Box 2807
Great Falls, MT  59403

Michael J. Milodragovich and Margaret L. Sanner
Milodragovich, Dale & Dye
P.O. Box 4947
Missoula, MT  59806-4947

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy