JUSTICE NELSON
delivered the Opinion of the Court.
Appellant Michael Riley (Riley) appeals the decision of the Eleventh Judicial District Court, Flathead County, denying his post-trial motion for a new trial. We reverse and remand for further proceedings consistent with this opinion.
Riley raises the following issue on appeal:
Did the District Court err when it denied Riley’s motion for a new trial on the grounds of juror and bailiff misconduct?
This case arises from a traffic accident that occurred near Whitefish, Montana on September 2, 1992. Respondent Theodore Allers (Allers) was injured when the motorcycle he was riding collided with a pickup driven by Riley. The accident occurred when Riley turned left at the same time that Allers was attempting to pass several vehicles, including Riley’s pickup. Allers sued Riley, claiming that Riley had been negligent in initiating a turn while Allers was making his pass. Riley answered, denying that Allers’ pass had been initiated when Riley started to turn and claiming that Allers had been negligent by attempting to pass in an unsafe manner.
A jury trial began on June 27, 1994. Following deliberations, the jury returned a verdict finding that: (1) Allers suffered $280,000 in damages; (2) Allers was 45 percent comparatively negligent; and (3) Riley was 55 percent comparatively negligent.
After the verdict had been returned, Riley’s counsel learned that, during the jury’s deliberations, the jury foreperson requested the bailiff to provide a dictionary and that the bailiff complied without informing or obtaining the permission of the court. Riley’s counsel interviewed several jurors who confirmed that the bailiff had provided both a legal dictionary and an ordinary dictionary. The jury used the dictionaries to look up the terms “proximate cause” and *3 “prudent.” The dictionary definitions relating to causation did not contain the foreseeability element which was contained in Instruction No. 14 given by the District Court.
Both parties obtained affidavits from different jurors regarding the use of the dictionaries. Allers also obtained an affidavit from the bailiff stating that he had provided the jury with the dictionaries. Riley filed a post-trial motion for judgment notwithstanding the verdict or, alternatively, for a new trial. The District Court denied the motions. Riley appeals.
Did the District Court err when it denied Riley’s motion for a new trial on the grounds of juror and bailiff misconduct?
Section 25-11-102, MCA, enumerates the grounds upon which a new trial may be granted:
The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
(1) irregularity in the proceedings of the ... jury ... by which either party was prevented from having a fair trial;
(2) misconduct of the jury.
In this case, Riley moved for a new trial on the grounds of bailiff and jury misconduct pursuant to subsections (1) and (2) of the statute.
On appeal, the parties provide different standards by which this Court should review a district court’s grant or denial of a motion for new trial under § 25-11-102(1) and (2), MCA. Allers cites Schmoyer v. Bourdeau (1966), 148 Mont. 340, 343, 420 P.2d 316, 317, in which this Court held:
[O]nce the District Court has considered the matter [of jury misconduct], however it is raised ... this Court will not lightly disturb that ruling. To overthrow it this Court must be shown by evidence that is clear, convincing, and practically free from doubt, of the error of the trial court’s ruling.
Riley points out that, in reviewing cases like the one at bar, this Court has employed a variety of standards, including a “practically free from doubt” standard, Easterday v. Canty (1986), 219 Mont. 420, 423, 712 P.2d 1305, 1307, and a “clear and convincing” standard, Ahmann v. American Federal Savings & Loan Ass’n (1988), 235 Mont. 184, 191, 766 P.2d 853, 857. Riley requests that we clarify the standard of review.
*4 In the two most recent civil cases in which this Court has reviewed a district court’s grant or denial of a motion for a new trial on the grounds of jury and/or bailiff misconduct, we enunciated the following standard of review: The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. Geiger v. Sherrodd, Inc. (1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108; Henrichs v. Todd (1990), 245 Mont. 286, 291, 800 P.2d 710, 713. We will continue to employ this standard of review when allegations of jury and/or bailiff misconduct are raised as grounds for a motion for a new trial. Those cases which articulate a different standard of review are overruled to that extent.
We will give considerable weight to the determination of the district court because it is in the best position to observe the jurors and determine the potential for prejudice when allegations of jury or bailiff misconduct are raised, and the district court will have significant latitude when ruling on these matters. Easterday, 712 P.2d at 1307; see State v. Gollehon (1993), 262 Mont. 293, 303, 864 P.2d 1257, 1263-64; State v. Eagan (1978), 178 Mont. 67, 76, 582 P.2d 1195, 1200.
Riley and Allers agree that jury misconduct occurred. However, Allers does not agree with Riley that the jury’s misconduct materially affected a substantial right of Riley, as required by § 25-11-102, MCA. The District Court found that “[w]ithout invading the jury’s decisions [sic] making process to determine that the dictionary definitions affected their deliberations, there is no evidence of any irregularity or misconduct materially affecting the substantial rights of [Riley].”
As to the bailiff’s actions, Allers and Riley disagree. Riley asserts that the bailiff’s actions went beyond the limits set forth in § 25-7-403, MCA, and thus created an irregularity in proceedings under § 25-11-102(1), MCA. Allers counters that the bailiff’s actions did not constitute an irregularity in proceedings because those actions did not materially affect Riley’s substantial rights. Allers appears to base that argument on the bailiff’s lack of communication with the jury when providing the dictionaries to them. Section 25-7-403, MCA, provides in pertinent part:
Unless by order of the court, the officer having [the jury] under his charge must not suffer any communication to be made to them or make any himself, except to ask them if they or two-thirds of them are agreed upon a verdict....
The statute strictly limits the interaction that is allowed between the jury and the bailiff. In its rationale for denying Riley’s *5 motion for new trial, the District Court concluded that, while “it was inappropriate for the bailiff to have complied with the jury’s request. ...” the bailiff nevertheless did not commit any error which substantially affected the right of Riley. We agree that, by providing the jury with extraneous materials without the permission of the court, the bailiff violated § 25-7-403, MCA. Nevertheless, since we determine that Riley is entitled to a new trial because of the misconduct of the jurors, we need not address further the effect of the bailiff’s misconduct as regards Riley’s motion for new trial.
We start from the premise that under the Constitution of Montana both the plaintiff and the defendant have a right to a fair trial. In Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717, we stated:
The guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial. Sec 27, Art. Ill, Montana Constitution. [Now Sec 17, Art. II],
Putro, 410 P.2d at 722. See also Brockie v. Omo Const., Inc. (1992), 255 Mont. 495, 499, 844 P.2d 61, 64.
Riley argues that, pursuant to Putro, jury or bailiff misconduct creates a rebuttable presumption of prejudice. Putro, 410 P.2d at 721. In Putro, a civil case, Putro was injured when the car she was driving collided with the truck that Baker was driving. Two passengers in Putro’s car died as a result of the accident. In a separate criminal proceeding, Baker pled guilty to charges of manslaughter. Prior to trial in the civil proceeding, the parties stipulated to exclude any reference to the criminal proceeding. On the day that the civil case was to be given to the jury, an article appeared in the local paper stating that Baker had pled guilty to manslaughter. Baker moved for a mistrial or a new trial on the grounds that at least some of the jurors must have read the article that morning, thereby tainting the verdict. The district court took the motion under advisement and decided to submit the case to the jury and to poll the jury members after they reached a verdict to determine if the article influenced them. When the district court polled the jury, it was discovered that all of the jurors had been exposed to the article because one of the jurors had clipped it out and brought it into the jury room. Several jurors said that they refused to read it before reaching a final verdict. All of the jurors told the district court that the article had no influence on their verdict. The district court then denied the motion for mistrial or a new trial. On appeal, we reversed, stating that we were not satisfied that the *6 article did not prejudicially influence the jury’s verdict. Putro, 410 P.2d at 721. We stated:
It was established early in our law ... that “if misconduct be shown tending to injure defendant, prejudice to the defendant is presumed, but not absolutely.” The presumption may be rebutted by the use of testimony of the jurors “to show facts which prove that prejudice or injury did not or could not occur.” But, “this court, however, has never held, and does not now hold, that, if the contact of the juror with outside, prejudicial influences be clearly demonstrated and uncontroverted, the juror may purge himself by testifying that such influences did not affect his judgment in forming his verdict.” The ultimate inquiry is for the court to decide upon the facts of each particular case.
Putro, 410 P.2d at 721-22.
Our holding in Putro, with regard to the testimony of jurors, has been qualified, however, because of the 1977 adoption of Rule 606(b), M.R.Evid., which provides that juror testimony — including affidavits and other evidence — that concerns the juror’s thoughts, concerns, emotions, statements, mental processes, or any other matter pertaining to the jury’s deliberations is inadmissible in determining the validity of the verdict. Under that Rule, a juror may provide testimony in only three circumstances:
[To determine] (1) whether extraneous prejudicial information was improperly brought to the jury’s attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.
Rule 606(b), M.R.Evid; Harry v. Elderkin (1981), 196 Mont. 1, 7, 637 P.2d 809, 813.
Here, it is clear from its order denying Riley’s motion for new trial that the District Court was cognizant of the restrictions imposed on the use of juror affidavits. The court, in accordance with our case law, determined that, while it could consider such affidavits for the limited purpose of showing that external influences and extraneous prejudicial information were brought to the jury’s attention, it was, nevertheless, barred from considering how, if at all, such information affected those deliberations or the jury’s decision making processes. See Estate of Spicher v. Miller (1993), 260 Mont. 504, 861 P.2d 183; Boyd v. State Medical Oxygen & Supply, Inc. (1990), 246 Mont. 247, 805 P.2d 1282. Since the District Court could not inquire into the *7 jury’s thought processes, it concluded that there was no evidence of prejudice — i.e., that the jury’s use of the dictionary definitions affected its determination of proximate cause and cause in fact. Moreover, having declined to presume prejudice, the court concluded that Riley’s substantial rights were not affected and that his motion for new trial must be denied.
In determining whether the substantial rights of the complaining party have been affected, we have, however, acknowledged that “[generally, courts in both civil and criminal cases have held that to warrant a new trial, the misconduct must be such that actual or potential injury results to the losing party.” Brockie, 844 P.2d at 64. (Emphasis added.) In Brockie, Brockie’s son was killed when the car he was a passenger in skidded near an icy bridge and struck a flasher board that was located in the median. At trial, defendant’s expert testified as to the distance between the flasher board and the interstate at the time of the accident. He based his analysis on motion theory and kinematics. Brockie gave no expert testimony to rebut defendant’s expert. The location of the flasher board at the time of the accident was pivotal in the case. Affidavits submitted by two jurors stated that the jury foreperson told them that he conducted independent research on motion theory and kinematics and that his research confirmed the defendant’s expert’s testimony. The district court denied Brockie’s motion for a new trial. We reversed, concluding that the district court abused its discretion. We found that the jury foreperson’s research, and the report of that research to two other jurors, was misconduct as defined by § 25-11-102(2), MCA. We also found that probable prejudice resulted from that conduct. In essence, the jury foreperson became a witness to the other jurors by corroborating defendant’s expert’s testimony with reports of his own independent research. Brockie, 844 P.2d at 64-65.
The situation in the present case is analogous, and the same result obtains. Here, the jury panel conducted independent research on extraneous material which redefined the critical element of causation by effectively eliminating from Instruction No. 14 any reference to foreseeability. Such conduct is sufficient to demonstrate probable prejudice and potential injury to the losing party. See Brockie, 844 P.2d at 64.
Allers’ arguments that the jury did not present any questions to the court regarding foreseeability; that foreseeability was not an element in this case; and that if the court had felt that the element of foreseeability had not been proven it would have granted Riley a *8 new trial, are beside the point. Instruction No. 14 correctly set forth Montana law on causation, and the jury was obligated to determine proximate cause in accordance with that instruction. Foreseeability was an element of proximate cause in the law given to the jury, and the jury was not at liberty to simply ignore the court’s instruction and to redefine causation by eliminating the foreseeability element. It is pure speculation to attempt to divine whether, and if so, to what extent the concept of foreseeability entered into the jury’s determination of causation. As the District Judge acknowledged, he could not determine the prejudicial effect of the jury’s conduct without invading the internal mechanisms of its decision making processes — something that he was precluded from doing under Rule 606(b), M.R.Evid. Since the trial court was barred from inquiring into the jurors’ thought processes, there was no practicable method to determine whether the outcome of the trial would have been different had the misconduct not occurred. See Putro, 410 P.2d at 722, and Brockie, 844 P.2d at 64.
As Riley points out in his brief on appeal:
This was a difficult case, involving complex issues of negligence, causation, and comparative negligence. The jury deliberated for nearly seven hours, and it is clear that it struggled with the evidence and the law, ultimately finding that Riley’s negligence exceeded Allers’s negligence by only 10%.
In Putro, we stated that a rebuttable presumption of prejudice exists when jury misconduct stems from extraneous influence; that the misconduct in question must show a “natural tendency” to prejudice; and that the presumption is not absolute. Putro, 410 P.2d at 721-22. As we have indicated above, our discussion in Putro has been somewhat qualified by the adoption of Rule 606(b), M.R.Evid., and by our interpretations of that Rule. However, given the facts of this case, we conclude that there was, at the very least, a reasonable probability that the jurors’ misconduct Influenced their decision; that probable prejudice and potential injury was apparent from the fact that the jury used extraneous materials — two dictionaries — to redefine a critical element of this negligence case — proximate cause — that was already correctly defined in the court’s instructions; and that, as a consequence, Riley’s substantial rights were compromised along with his constitutional right to a fair trial.
While not dealing with juror misconduct, we, nevertheless, made an observation in a case involving improper argument of counsel that is germane to our resolution of the issue raised here. In Kuhnke v. *9 Fisher (1984), 210 Mont. 114, 126, 683 P.2d 916, 922, we observed that there is no way to measure how a prejudicial argument may affect an adverse party. We stated that “[t]he only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial.” Kuhnke, 683 P.2d at 922. See also Putro, 410 P.2d at 722, where this Court stated:
[W]e also realize that unexplained prejudicial references to important matters in litigation may have a “natural tendency” to infect the proceedings with an unfairness that can be corrected only by starting anew the legal contest.
Similarly, the prejudice to a party occasioned by the jurors taking it upon themselves to redefine a term of art in a critical jury instruction from their review of extraneous materials can hardly be measured either — especially where the trial court is barred by rule from obtaining the very evidence that might resolve that issue one way or the other. The only cure for such mischief and for the potential prejudice and injury resulting therefrom is to grant a new trial.
Accordingly, we hold that the District Court manifestly abused its discretion in denying Riley’s motion for new trial, and we reverse and remand for further proceedings consistent with this opinion.
CHIEF JUSTICE TURNAGE, JUSTICES GRAY, WEBER and LEAPHART concur.