**FILED**

June 22 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0632

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 138

DEREK STEBNER and STEBNER REAL
ESTATE, INC., a Washington corporation,

      Plaintiffs and Appellants,

  v.

ASSOCIATED MATERIALS, INC. (AMI) d/b/a ALSIDE,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 05-571
                    Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Perry J. Schneider; Milodragovich, Dale, Steinbrenner & Nygren; Missoula,
          Montana

      For Appellee:

          Paul Sharkey and Mitch Vap; Phillips Law Firm; Missoula, Montana

                        Submitted on Briefs:  May 12, 2010

                                 Decided:  June 22, 2010

Filed:

               _____
                         Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 A jury in the Fourth Judicial District Court, Missoula County, found that Associated Materials, Inc. (Alside) did not breach its warranty to Derek Stebner and Stebner Real Estate, Inc. (Stebner). After the trial, Stebner filed a motion for a new trial, pursuant to M. R. Civ. P. 59, claiming juror misconduct. The District Court denied Stebner's motion.

¶2 The sole issue Stebner raises on appeal is whether the District Court erred in concluding that the alleged jurors' misconduct did not warrant a new trial.

## BACKGROUND

¶3 Stebner, the owner of Riverside Apartment Complex, brought a breach of warranty action against Alside. Stebner had made a claim for replacement of the apartment complex's steel siding under the Limited Warranty. Alside denied his claim because, according to Alside, the damage to the siding was not covered under the warranty.

¶4 A jury trial was held from September 15, 2009, to September 18, 2009. After hearing the evidence, the jury began deliberations at approximately 4:00 p.m. on September 17. Before any deliberations, five jurors voted in favor of Alside, six voted in favor of Stebner, with one abstention. After about an hour of deliberations, the jurors voted six in favor of Stebner and six in favor of Alside. The jury was excused at 5:00 p.m. to allow one juror to pick up a child.

¶5 The jury reconvened at 8:30 a.m. the next day. Within five minutes, they voted eleven to one in favor of Alside and delivered the verdict accordingly. After the verdict, Stebner learned from a juror that some of the jurors were allegedly talking about the case

2

outside of the jury room and that one juror had researched the definition of "preponderance" on the internet.

¶6 Stebner filed a motion for a new trial, arguing that a new trial was warranted to avoid manifest injustice due to juror misconduct. Stebner attached the affidavit of Juror Christine Strukel to his motion, in which Juror Strukel testified she heard three jurors discussing the case as they were walking outside of the courthouse. She said the jurors stopped discussing the case when they saw she was listening to the conversation. Juror Strukel also testified in her affidavit that "[d]uring the course of deliberations, the jury used an outside resource to help determine the definition of the term 'preponderance.'"

¶7 Alside attached three juror affidavits to their response brief. In the first affidavit, Juror Laurie Schneider testified that "[a]fter we took our vote, I commented that I thought the verdict was correct based on my understanding of 'preponderance.' I previously looked up the word 'preponderance' on the internet. My understanding of 'preponderance' matched the jury instruction that was submitted to us." She also testified that she based her decision on the evidence presented at trial and that she voted in favor of Alside because the evidence submitted during the trial did not support a verdict in favor of Stebner.

¶8 The other two jurors testified in their affidavits that Juror Schneider made her comment about her research on "preponderance" after they voted in favor of Alside and her comment had no effect on their decision. They also testified that they based their decision on the evidence presented at trial and they voted in favor of Alside because the evidence submitted during the trial did not support a verdict in favor of Stebner.

3

¶9     The District Court denied Stebner's motion, stating simply that it did so "under the reasoning of [*Erickson v. Perrett*, 175 Mont. 87, 572 P.2d 518 (1977)], which requires [that] the alleged jury misconduct must affect a material matter that is in dispute and must prejudice the complaining party sufficiently enough to render the jury's verdict manifestly unjust to warrant the granting of a new trial."

¶10    Stebner appeals, reiterating his argument that the only remedy to cure the juror misconduct and to "uphold the sanctity of the judicial process" is to reverse the District Court and order a new trial.

## STANDARD OF REVIEW

¶11    Our standard of review of a district court's denial of a motion for a new trial depends on the basis of the motion. *Fish v. Harris*, 2008 MT 302, ¶ 8, 345 Mont. 527, 192 P.3d 238. When the basis of a motion for a new trial is alleged jury misconduct, this Court will not disturb a district court's decision absent a manifest abuse of discretion. *Id.* A manifest abuse of discretion is one that is obvious, evident, or unmistakable. *Shammel v. Canyon Resources, Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912. "We will give considerable weight to the determination of the district court because it is in the best position to observe the jurors and determine the potential for prejudice when allegations of jury or bailiff misconduct are raised, and the district court will have significant latitude when ruling on these matters." *Allers v. Riley*, 273 Mont. 1, 4, 901 P.2d 600, 602 (1995).

## DISCUSSION

4

¶12 *Did the District Court err in concluding that the jurors' misconduct did not warrant a new trial?*

¶13 Stebner contends that M. R. Civ. P. 59(a), (g), and § 25-11-102(2), MCA, allow a district court to grant a new trial for juror misconduct to prevent manifest injustice.[1] He claims that because Juror Schneider used outside resources during the course of deliberations, he did not receive a fair trial. According to Stebner, the evidence proving he was prejudiced are the allegations in Juror Strukel's affidavit and that six jurors voted in favor of him on the first day of deliberations and then, the next morning, voted eleven to one in favor of Alside "without further deliberation other than a report on the Juror's independent research." Stebner contends that this evidence proves he was prejudiced by the juror's internet research and the jurors' discussions outside the courthouse. Stebner argues that the District Court manifestly abused its discretion when it denied his motion for a new trial.

¶14 Alside contends that because internal influences of a jury cannot be used to impeach a jury verdict under M. R. Evid. 606(b), Juror Schneider's comment regarding her internet research cannot be considered. Alside argues that the information was internal, as opposed to external, because no hardcopy was brought into the jury room, because Juror Schneider based her comments on her own subjective understanding of the term "preponderance," and because Juror Schneider's internet definition matched the court's jury instruction.

---

[1] Stebner extensively discusses Rule 59(g), motion to alter or amend a judgment, and the supporting precedent in his briefs in the District Court and this Court. However, his motion in the District Court was for a new trial, which is governed by Rule 59(a), and not a motion to amend the judgment. We therefore decline to address Stebner's arguments regarding Rule 59(g).

Alternatively, Alside argues that Stebner has failed to show he was prejudiced by both instances of the alleged juror misconduct.

¶15    M. R. Civ. P. 59(a) allows the court to grant a new trial on "all or part of the issues for any of the reasons provided by the statutes of the state of Montana." Section 25-11-102(2), MCA, provides that a new trial may be granted for misconduct of the jury. Not every act of jury misconduct mandates a new trial. The alleged jury misconduct must affect a material matter that is in dispute and must prejudice the complaining party sufficiently enough to render the jury's verdict manifestly unjust. *Erickson*, 175 Mont. at 91, 572 P.2d at 520.

¶16    Juror misconduct may be proven by the affidavit of any one of the jurors. Section 25-11-102(2), MCA. M. R. Evid. 606(b) governs the use of juror testimony and affidavits to inquire into the validity of a jury verdict and generally prohibits juror affidavits from being used if they concern any matter or statement made during deliberations. In other words, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury. *Harry v. Elderkin*, 196 Mont. 1, 8, 637 P.2d 809, 813 (1981). "Jurors are expected to bring to the courtroom their own knowledge and experience to aid in their resolution of the case." *State v. Kelman*, 276 Mont. 253, 262, 915 P.2d 854, 860 (1996). Some examples of internal influences are: a juror commenting to the other jurors about one of the plaintiff's witnesses, *McGillen v Plum Creek Timber Co.*, 1998 MT 193, ¶ 16, 290 Mont. 264, 964 P.2d 18; a juror's comment that she knew the defendant owned a strip bar with a bad reputation, *Kelman*, 276 Mont. at 261, 915 P.2d at 859; and a juror's report to the other jurors about observations he made while on a lunch break, *Williams Feed, Inc. v. Dept. of Transp.*, 2007

6

MT 79, ¶ 25, 336 Mont. 493, 155 P.3d 1228, *overruled on other grounds*, *Giambra v. Kelsey*, 2007 MT 158, 338 Mont. 19, 162 P.3d 134. In all of these cases, we held that the influence on the jury was internal, thus, the juror's affidavit could not be used to impeach the jury verdict. *Williams Feed*, ¶ 30; *McGillen*, ¶ 22; *Kelman*, 276 Mont. at 262-63, 915 P.2d at 860.

¶17 However, a juror affidavit may be used to impeach the verdict if it involves any matter concerning, *inter alia*, whether extraneous prejudicial information was improperly brought to the jury's attention. M. R. Evid. 606(b). Where extraneous prejudicial information is brought to the jury's attention, "juror affidavits can be the basis for overturning the judgment if either party was thereby deprived of a fair trial." *Harry*, 196 Mont. at 8, 637 P.2d at 813. A rebuttable presumption of prejudice exists when jury misconduct stems from extraneous influence; however, the presumption is not absolute and the misconduct must show a "natural tendency" to prejudice. *Allers*, 273 Mont. at 8, 901 P.2d at 605.

¶18 In *Allers*, a bailiff brought a dictionary into the jury room at a juror's request. The dictionary definition of "proximate cause" differed from the court's jury instruction in that it did not include the element of foreseeability. *Allers*, 273 Mont. at 2-3, 901 P.2d at 601. We said that because "the jury used extraneous materials—two dictionaries—to redefine a critical element of this negligence case . . . Riley's substantial rights were compromised along with his constitutional right to a fair trial." *Allers*, 273 Mont. at 8, 901 P.2d at 605.

7

¶19 In *Brockie v. Omo Constr.*, 255 Mont. 495, 500, 844 P.2d 61, 61 (1992), the jury foreperson went to the library and conducted research on a theory of physics in hopes of clarifying an expert's testimony. While the foreperson's affidavit stated he did not mention his research during deliberations, two other juror affidavits stated that he did mention his research to the other jurors. *Id*. We held that the district court abused its discretion when it denied Brockie's motion for a new trial because the foreperson's actions constituted misconduct that prejudiced Brockie. *Id.*

¶20 Here, Juror Schneider's actions are more like the jurors' actions in *Allers* and *Brockie*; thus, we conclude that her internet research constituted an external influence. Because her affidavit concerns whether extraneous prejudicial information was improperly brought to a jury's attention, we may use her affidavit to determine if the jury's verdict should be impeached. *See* M. R. Evid. 606(b). Keeping in mind the presumption of prejudice that arises when juror misconduct stems from an external influence, we must now determine whether Stebner was prejudiced sufficiently enough to render the jury's verdict manifestly unjust. *See Erickson*, 175 Mont. at 91, 572 P.2d at 520.

¶21 We agree with Alside that Stebner was not prejudiced by Juror Schneider's comment regarding her research and subsequent understanding of the term "preponderance." The comment did not affect the verdict because the jurors had already voted eleven to one in favor of Alside when the comment was made. Also, two jurors testified that they based their vote on the evidence, not on Juror Schneider's comment. Three jurors testified that they based their vote on the evidence presented at trial. Moreover, no new information was

8

presented on the definition of "preponderance." *See Erickson*, 175 Mont. at 92, 572 P.2d at 520 (holding no prejudice occurred because no new information was presented on the material matter in dispute). According to the affidavits, the internet definition matched the jury instruction. The presumption of prejudice is rebutted by the evidence in the record.

¶22 In addition, Stebner was not prejudiced by the extraneous juror discussions. Without passing judgment on the truthfulness of Juror Strukel's testimony regarding jurors discussing the case outside of the courthouse, we must consider that three other jurors contradicted her testimony. Nothing in the affidavits show that any juror's vote was influenced by anything other than the evidence presented at trial. Stebner fails to show how the jurors' discussions prejudiced him. That some jurors changed their minds overnight is not, by itself, evidence of prejudice.

¶23 The District Court concluded that the alleged juror misconduct did not prejudice Stebner sufficiently enough to render the jury's verdict manifestly unjust to warrant the granting of a new trial, and we give considerable weight to the District Court's determination. The District Court did not manifestly abuse its discretion when it denied Stebner's motion for a new trial.

¶24 While we hold that Stebner was not prejudiced by the juror conducting internet research in this case, we recognize that this issue is an emerging and increasing problem that we need to make every effort to thwart. Therefore, we encourage district courts to include and emphasize a prohibition on internet research in their cautionary instructions to the jury if they have not already done so.

9

**CONCLUSION**

¶25   The District Court did not manifestly abuse its discretion when it denied Stebner's motion for a new trial.

¶26   Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE