FILED

12/27/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0456

DA 22-0456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 253

IN THE MATTER OF THE ESTATE OF:

HORATIO W. BURNS,

    Deceased.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DP 2018-10
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Christopher T. Sweeney, Stephanie Denton Baucus, Bobbi K. Owen,
Moulton Bellingham PC, Billings, Montana

    For Appellee Estate of Horatio W. Burns:

        J. Devlan Geddes, Goetz, Geddes & Gardner, P.C., Bozeman,
Montana

        Ralph W. Steele, Ralph W. Steele, P.C., Bozeman, Montana

    For Appellee Alison Burns:

        Grant R. Kelly, Golden Triangle Law, PLLC, Fort Benton, Montana

        Submitted on Briefs:  October 11, 2023

        Decided:  December 27, 2023

Filed:

                _____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Lindsay Burns Barbier sued to challenge the validity of the 2016 will of her father, Horatio Burns, claiming that her brother Cameron and Cameron's wife Alison exerted undue influence over Horatio. Following a jury verdict, the Sixth Judicial District Court, Sweet Grass County, entered judgment validating the 2016 will and awarding attorney fees to both Horatio's Estate (the Estate) and Alison. Lindsay appeals, arguing that a new trial is required based on juror misconduct and that the District Court erred in its award of attorney fees and calculation of interest. We affirm the court's judgment on the verdict, reverse its attorney fee and interest awards in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Horatio Burns died in 2018. At the time of his death, Horatio had significant assets including properties and ranching operations in Montana and Oregon. In addition to significant personal and real property holdings, Horatio held a 35.10% interest in the H.W. Burns Family LLC (the LLC).[1] In 2010, Horatio executed a last will and testament. In his 2010 will, Horatio bequeathed his estate primarily to his wife Judith. In the event that Judith predeceased Horatio, his estate, including his interest in the LLC, would pass into a trust to benefit Cameron, Lindsay, and Seth in equal shares. Judith died in 2013.

¶3     Horatio suffered an ischemic stroke in 2013 and his health began to deteriorate. At trial, multiple witnesses testified that, despite his worsening health, Horatio continued to

---

[1] Prior to 2015, Horatio and his three children, Cameron, Lindsay, and Seth, each held a 25% share of the LLC. In 2015, Seth dissociated from the LLC.

2

participate in the operation of the LLC's ranching activities. Following Horatio's stroke, Cameron and Alison assisted Horatio in the operation of the LLC as well as in managing his personal affairs and estate planning.

¶4 In 2016, Horatio executed a new will. In the 2016 document, Horatio bequeathed his entire interest in the LLC to Cameron. To Alison, Horatio left a roughly 2,700-acre property in Sweet Grass County, commonly referred to as The Iverson. The remainder of Horatio's estate would transfer to the LLC. Except to the extent they held shares in the LLC, the 2016 will disinherited Lindsay and Seth.

¶5 Shortly after Horatio's death, Cameron applied to enter the 2016 will into probate and requested that the court appoint him as personal representative of the Estate. Lindsay filed an objection to the probate of the 2016 will and claimed it was the result of undue influence on the part of Cameron and Alison. Nearly two years into the ensuing litigation, Alison filed, in her individual capacity, a response to Lindsay's objection to the 2016 will. Lindsay moved to strike Alison's response. The District Court denied Lindsay's motion and, in February 2022, held a seven-day jury trial in Big Timber to determine the validity of the will.

¶6 Given the small population from which to pull a jury and Horatio's prominence in the community, the parties were aware of the potential for jurors to have pre-existing relationships with the Burns family. During *voir dire*, the court and attorneys for both parties inquired with prospective jurors whether they had any knowledge of the Burns family. Multiple jurors informed the parties they had worked with, lived near, or interacted

3

with Horatio and his children. Prospective jurors Carroccia and Agnew both testified that they knew the Burns family but that knowing the family would not impair their ability to be impartial. Neither juror was challenged, and both were seated on the jury.

¶7 At the conclusion of trial, the jury returned a special verdict finding that Horatio did not lack testamentary capacity when he executed the 2016 will and that the 2016 will was not the result of undue influence. Following the verdict, Lindsay and her legal team contacted members of the jury. In their conversations with jurors, Lindsay's team learned that during deliberations, juror Wood used his cell phone to research a definition of the word "undue" and had communicated his findings to other jurors.

¶8 On May 20, 2022, Lindsay moved for a new trial. Lindsay offered the affidavits of jurors Wood and Mauland, both of whom testified about Wood's internet research. The District Court did not rule on Lindsay's motion, and it was deemed denied. Several months later, the District Court awarded attorney fees in the amount of $428,659.00 to the Estate and $86,931.50 to Alison. Lindsay appeals the denial of her motion to strike Alison's response, the denial of her motion for a new trial, and the award of and calculation of applicable interest on attorney fees.

**STANDARDS OF REVIEW**

¶9 A district court has discretion to allow intervention or joinder of a non-party to a suit, and this Court will review such a decision for abuse of that discretion. *Connell v. State Dep't of Soc. & Rehab. Servs.*, 2003 MT 361, ¶ 13, 319 Mont. 69, 81 P.3d 1279; *Wheat v. Safeway Stores*, 146 Mont. 105, 111-14, 404 P.2d 317, 320-21 (1965). A court

4

abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in a substantial injustice. *Shilhanek v. D-2 Trucking, Inc.*, 2000 MT 16, ¶ 24, 298 Mont. 101, 994 P.2d 1105.

¶10 The decision to grant or deny a new trial based on jury misconduct is within the discretion of the trial judge and we will not disturb that decision absent a showing of manifest abuse of discretion. *Allers v. Riley*, 273 Mont. 1, 4, 901 P.2d 600, 602 (1995). A manifest abuse is one that is "obvious, evident, or unmistakable." *Stebner v. Associated Materials, Inc.*, 2010 MT 138, ¶ 11, 356 Mont. 520, 234 P.3d 94 (internal citation omitted).

¶11 We review a district court's interpretation and construction of statutory provisions de novo to determine if it was correct. *Reichert v. State*, 2012 MT 111, ¶ 19, 365 Mont. 92, 278 P.3d 455. Whether a party is statutorily entitled to attorney fees is a question of law that we review for correctness. *Mlekush v. Farmers Ins. Exch.*, 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913.

## DISCUSSION

¶12 *1. Whether the District Court erred in allowing Alison to file a response.*

¶13 Lindsay filed her petition objecting to the probate of the 2016 will on September 3, 2019. She alleged, among other things, that the 2016 will was made as the "direct result of undue influence" by Alison. Following Lindsay's petition, both Lindsay and Alison actively participated in the litigation, including the exchange of discovery and participating in depositions and mediation. Nearly two years into Lindsay's challenge to the 2016 will, Alison, acting in her personal capacity, filed a response to Lindsay's petition. Lindsay

5

moved the District Court to strike Alison's response. She argued that it was untimely, that Alison's interests were fully represented by the Estate, and that Alison did not seek leave to intervene under M. R. Civ. P. 24. Denying the motion, the District Court reasoned that Alison was not required to petition the court to intervene, as she was an "interested person" under the 2016 will and Lindsay had treated her as a party to the claim throughout litigation.

¶14 Montana has codified the Uniform Probate Code under Title 72, chapters 1-5, and chapter 16, part 6, MCA (MUPC). Section 72-1-101(1), MCA. Except where the MUPC explicitly provides otherwise, the Montana Rules of Civil Procedure govern probate actions in Montana. Section 72-1-207, MCA. The MUPC defines an "[i]nterested person" as "heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent." Section 72-1-103(25), MCA. In formal probate proceedings, interested persons have the right to petition the court for orders in matters within the court's jurisdiction. Section 72-3-105, MCA. The MUPC recognizes, among other permitted pleadings in a probate proceeding, a response to an application, petition, report, or account. Section 72-1-310, MCA. That section does not address who may file such a pleading or when it must be filed. Nor, as Lindsay points out, does the MUPC contain a provision specifically stating that an interested person is considered a party in a will contest.

¶15 The Montana Rules of Civil Procedure, however, include several provisions that allow non-parties to enter a case. Rule 20(a)(2) allows persons to be joined as defendants in an action if:

6

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

District courts have broad discretion over the joinder of proper parties under Rule 20. *See Wheat,* 146 Mont. at 111-14, 404 P.2d at 320-21. A proper party is one whose joinder will keep litigation to a minimum while determining the rights of all persons concerned. *Preste v. Mountain View Ranches*, 180 Mont. 369, 376, 590 P.2d 1132, 1136 (1979) (quoting *Wheat*, 146 Mont. at 112, 404 P.2d at 320). Standards for permissive joinder under Rule 20 are to be liberally construed to promote trial convenience and judicial economy while preserving the substantial rights of the parties. *See McDowell v. Burlington N. Santa Fe Ry. Co.,* 2017 U.S. Dist. LEXIS 12524, *5 (D. Mont. 2017) (citing *Wheat*, 146 Mont. at 112, 404 P.2d at 321).

¶16 In addition, under M. R. Civ. P. 24, a district court may allow a non-party to intervene in a case to represent their interests. Except where intervention is required by law, district courts have broad discretion to determine whether to allow a party to enter a case. *See Shilhanek*, ¶ 48. A district court may allow intervention where a party has a claim or defense that shares a common question of law or fact with the main action. M. R. Civ. P. 24(b)(1)(B).

¶17 Lindsay challenges the District Court's holding that Alison's status as an interested person rendered her a party to the case. But even if Alison was not a party by virtue of Lindsay's petition, we conclude that the District Court did not act arbitrarily or without

7

employment of conscientious judgment when it allowed Alison to respond to the petition. *Shilhanek*, ¶ 24. Despite several procedural anomalies in the way Alison's participation unfolded,[2] the court clearly considered the relevant factors in giving her party status. As the District Court noted, Lindsay and Alison behaved as though Alison was a party to the case from the beginning of the process. Lindsay's primary allegations of undue influence were against Alison—allegations against which the District Court determined Alison should be allowed to defend. Further, Lindsay served discovery requests on Alison as though she were a party, took Alison's deposition, and generally proceeded as though Alison were a party to the case. Finally, prejudice to the rights of concerned parties is a factor under both M. R. Civ. P. 20 and 24. *See Wheat*, 146 Mont. at 111-12, 404 P.2d at 320 (explaining that joinder is proper where "the rights of all persons concerned can be determined in one action."); M. R. Civ. P. 24(b)(3) (providing that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). Lindsay has not shown that allowing Alison to file a response to a petition caused her any substantial prejudice when the parties had been litigating the issue for nearly two years. The Court does not set aside a verdict "[u]nless justice requires otherwise." M. R. Civ. P. 61 ("At every stage of the proceeding,

---

[2] Lindsay's verified petition objecting to probate of the 2016 will did not name Alison as a party nor did it request relief from Alison. Lindsay never moved to join Alison as a party, nor did Alison ever move to intervene. Despite never joining Alison formally, Lindsay served discovery requests on Alison under M. R. Civ. P. 33, 34, and 36—which a party may serve only on other parties. In her discovery requests to Alison, Linsday protested Alison's participation as a party. At other times in the proceedings, however, Lindsay stated that she "did not object to Alison's [response]. [f]or the sake of fully and completely litigating the parties' disputes at issue in [the case]. . ."

the court must disregard all errors and defects that do not affect any party's substantial rights"). The District Court did not abuse its discretion by allowing Alison to participate in the case and to file a response to Lindsay's petition.

¶18 Lindsay persists that Alison's response nonetheless should be time-barred, as it was filed nearly two years after the petition. The District Court, relying on our decision in *Raleigh v. Dist. Ct. First Judicial Dist.*, 24 Mont. 306, 61 P. 991 (1900), found that Alison's response was not time-barred. We held in *Raleigh* that a "statement of opposition to the probate of [a] will may properly be filed at any time prior to the hearing of proof of the will." 24 Mont. at 311, 61 P. at 993. *Raleigh* predated Montana's adoption of the MUPC and the Montana Rules of Civil Procedure by several decades, did not address a response to a petition to declare a will invalid, and is not applicable under the circumstances here.

¶19 Regardless, the District Court did not abuse its discretion in rejecting Lindsay's motion. Timeliness of intervention depends on the facts and circumstances of each case, and the district court has discretion when determining whether to allow such a motion. M. R. Civ. P. 24(b)(1); *See In re C.C.L.B.*, 2001 MT 66, ¶ 23, 305 Mont. 22, 22 P.3d 646 (stating that timeliness is a question largely committed to the district court's discretion). To determine whether intervention is timely, a court considers:

> (1) the length of time the intervenor knew or should have known of its interest in the case before moving to intervene;
> (2) the prejudice to the original parties, if intervention is granted, resulting from the intervenor's delay in making its application to intervene;
> (3) the prejudice to the intervenor if the motion is denied; and
> (4) any unusual circumstances mitigating for or against a determination that the application is timely.

9

*In re C.C.L.B.*, ¶ 24 (citations omitted). "None of these factors are, by themselves, dispositive." *In re C.C.L.B.*, ¶ 24.

¶20 No prejudice came to the Estate or to Lindsay by allowing Alison to continue to participate in a process that she had been part of from the beginning. Conversely, to suddenly disallow Alison's participation after two years would have prejudiced Alison's ability to defend her interests in the case. Finally, the manner in which the parties proceeded in this case supports the District Court's decision to allow Alison's participation. We agree with the District Court that Alison "certainly could have, and should have," filed her response sooner. The District Court, however, did not act arbitrarily or without the conscientious exercise of judgment when it allowed Alison to file her response.

¶21 *2. Whether Lindsay is entitled to a new trial for juror misconduct.*

¶22 Under M. R. Civ. P. 59(a)(1)(A), a district court may grant a new trial for any reason that has previously supported the grant of a new trial in an action at law in a Montana state court. Montana law allows a district court to grant a new trial where the substantial rights of a party have been materially affected by, in relevant part:

> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
>
> (2) misconduct of the jury.

Section 25-11-102(1-2), MCA. The decision to grant a new trial is discretionary; not every act of juror misconduct will warrant a new trial. *Stebner*, ¶ 15. On appeal, Lindsay argues that a new trial is warranted under both §§ 25-11-102(1) and (2), MCA.

10

¶23   In support of her motion, Lindsay offered her own affidavit and the affidavits of her brother Seth, jurors Mauland and Wood, Lindsay's attorney (Ms. Baucus), and Ms. Baucus's paralegal (Ms. Willson).  In some circumstances, juror affidavits may be admissible to show misconduct under § 25-11-102(2), MCA.  *Stebner*, ¶ 16.  The use of such affidavits is governed by M. R. Evid. 606(b), which reads:

> Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

> However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

Under this Rule, juror affidavits may not be used to impeach a verdict based on internal influences, but a party may offer them to show that external influence impacted deliberation. *Stebner*, ¶¶ 16-17.  To render a verdict invalid, the evidence must be sufficient to show that an external influence was brought to bear upon any juror and that the party was "deprived of a fair trial."  *Stebner*, ¶ 17.  If a party presents evidence showing external influence on deliberations, we will presume that juror misconduct has occurred.  *Stebner*,

11

¶ 17 (citing *Allers*, 273 Mont. at 8, 901 P.2d at 605). This presumption is not absolute, however, and a new trial is warranted only if the misconduct in question shows a "natural tendency" to prejudice. *Allers*, 273 Mont. at 8, 901 P.2d at 605 (citing *Putro v. Baker*, 147 Mont. 139, 147-48, 410 P.2d 717, 721-22 (1966)).

¶24 In her motion for a new trial, Lindsay included the signed affidavits of jurors Wood and Mauland. Mauland stated that during deliberations one of the male jurors looked up a definition for the term "undue" on his cell phone. Although she could not remember the definition, she recalled it "being something to the effect of being malicious or malicious sounding." In his affidavit, Wood recounted that during deliberations he accessed a dictionary definition of "undue" from Google, which defined the term as "unwarranted or inappropriate because excessive or disproportionate." In response, the Estate and Alison offered the affidavits of jurors Lehman, Agnew, Isaacs, and DeBoer, all of whom attested that they either did not know of or were not affected by Wood's research.

¶25 "[I]ndependent research on extraneous material which redefine[s] [a] critical element" of a case is external to deliberations. *Allers*, 273 Mont. at 7, 901 P.2d at 604. *Allers* involved a jury's use of external sources to define words contained in the jury instructions. During deliberations, the jury foreperson requested the bailiff provide the jury with a dictionary. *Allers*, 273 Mont. at 2, 901 P.2d at 601. Without permission from the district court, the bailiff delivered the dictionary to the jury, and the jury used it to look up the terms "proximate cause" and "prudent." *Allers*, 237 Mont. at 2, 901 P.2d at 601. We

12

held that the dictionary obtained by the jury was an external source, and the jury's use of it warranted a new trial. *Allers*, 237 Mont. at 9, 901 P.2d at 605.

¶26 The fundamental claim Lindsay made in her objection to the probate of the 2016 will was that Alison exerted undue influence on Horatio at the end of his life. In Instruction No. 16, the District Court instructed the jury that "[u]ndue influence exists when a confidential relationship or a position of authority is used to take an unfair advantage of the testator's weakness of mind, or to take a grossly oppressive and unfair advantage of the testator's necessities or distress." Despite this instruction, Wood consulted external sources when distinguishing between influence and undue influence. Just as in *Allers*, the jury's use of external sources is a proper subject for a juror's affidavit under Rule 606(b) and raises an inference of misconduct. *Stebner*, ¶ 17.[3]

¶27 To the limited extent Lindsay's proffered evidence is admissible, she has failed to show that Wood's internet research had a "natural tendency" to prejudice her substantial rights. *Allers*, 273 Mont. at 8, 901 P.2d at 605. To warrant a new trial, misconduct "must be such that actual or potential injury results to the losing party." *Allers*, 273 Mont. at 7, 901 P.2d at 604 (citing *Brockie v. Omo Constr.*, 255 Mont. 495, 498, 844 P.2d 61, 64 (1992)). In *Allers*, the dictionary definition of "proximate cause" on which the jury relied

---

[3] None of the remaining juror statements Lindsay proffered qualify as extraneous information or outside influence admissible under Rule 606(b). *See State v. Kelman*, 276 Mont. 253, 262-63, 915 P.2d 854, 860 (1996) (explaining that jurors must be permitted to bring their own knowledge and experience to the deliberation room and that a juror communicating their belief that a criminal defendant owned a strip club to other jurors was an internal influence); *McGillen v. Plum Creek Timber Co.*, 1998 MT 193, ¶¶ 16-20, 290 Mont. 264, 964 P.2d 18 (holding that a juror failing to disclose his knowledge of a witness during *voir dire* and telling other jurors about his impression of the witness during deliberations were internal influences).

said nothing about the element of foreseeability. 273 Mont. at 2-3, 901 P.2d at 601. The court's instruction in the case, however, correctly included the elements of proximate cause under Montana law. *Allers,* 273 Mont. at 3, 901 P.2d at 601. Accordingly, the jury in *Allers* materially changed a "critical jury instruction" through their "review of extraneous materials." 273 Mont. at 9, 901 P.2d at 605. The same prejudice is not shown in this case.

¶28 In his affidavit, juror Wood explained that during deliberation he found a Google definition of the term "undue" as "unwarranted or inappropriate because excessive or disproportionate." Though the language differs from the definition used in Instruction No. 16, the difference is not material like it was in *Allers*. The definitions of "oppressive" and "unfair," used in the instructions given to the jury, and "excessive" and "disproportionate," used in the definition found by Wood, all contain an element of one party possessing an inappropriately outsized power over another. *See Black's Law* (Bryan A Garner ed., 11th ed. 2019) (defining oppressive as "[t]he act or an instance of unjustly exercising authority or power . . ."; unfair persuasion as "[a] type of undue influence in which a stronger party achieves a result by means that seriously impair the weaker party's free and competent exercise of judgment;" excessive as "[t]he action of exceeding one's authority or overstepping a prescribed limit . . ."; and disproportionate as "[h]aving too much or too little . . . in comparison with something else in size, amount, importance[.]"). These definitions show that, in the context of persuasion over another, the terms used in the court's instruction and Wood's research are not substantially different. Unlike in *Allers,* where the extraneous definition eliminated a crucial element from a legal claim, the

14

definition found by Wood does not materially affect the instruction in a meaningful way. 273 Mont. at 9, 901 P.2d at 605.

¶29 Further, the evidence available does not demonstrate a likelihood that the jury's verdict was influenced by juror Wood's research. Four members of the jury attested that they either did not know of or did not rely on Wood's extraneous research. The facts of this case are more analogous to those in *Stebner*. There we concluded that a juror's research regarding the definition of the term "preponderance" did not require a new trial. *Stebner*, ¶¶ 5, 21. We reasoned that because "no new information" came from the extraneous definition, and several jurors testified they did not rely on the extraneous material at all, the extraneous influence did not prejudice the appellant's right to a fair trial. *Stebner*, ¶ 21. The presumption of misconduct raised by the evidence is sufficiently refuted in this case. Lindsay has not shown that her substantial rights were prejudiced by the jury's use of extraneous research.

¶30 We nonetheless reiterate a point we made in *Stebner*—the use of personal devices by jurors during deliberation is an emerging and increasing problem. *Stebner*, ¶ 24. We again encourage district courts across Montana to include in their cautionary instructions to all juries, both at the beginning and at the conclusion of trial, a firm prohibition against internet research during trial and deliberations.

¶31 As noted above, Lindsay also offered the affidavits of herself, Seth, Ms. Baucus, and Ms. Willson purporting to show that juror Carroccia improperly relied on his preexisting opinion of Horatio's mental capacity to determine whether undue influence had

15

occurred and that juror Agnew failed to disclose during *voir dire* that he was predisposed to disbelieve claims of the type Lindsay alleged. All four affidavits purport to recount conversations Lindsay's team had with jurors following the trial and all consist overwhelmingly of inadmissible hearsay evidence.

¶32 Lindsay maintains that several hearsay exceptions apply to certain statements. First, Lindsay argues that hearsay statements in the affidavits of herself, Seth, and Ms. Willson that Carroccia said he relied on his prior opinion of Horatio to determine he had testamentary capacity are not hearsay under M. R. Evid. 801(c), or are excepted under M. R. Evid. 803(1) or 804(b)(3).[4] The statements attributed to Carroccia are offered to prove precisely what they assert—that Carroccia held an opinion of Horatio prior to the trial and that he relied on that opinion in reaching his decision in the case. Accordingly, not only are they barred by Rule 606(b), the statements are hearsay. M. R. Evid. 803(1) allows for the admission of an otherwise inadmissible hearsay statement where the statement is describing or explaining an event or condition and is made during or immediately after the event or condition. Lindsay does not elaborate on the event or condition Carroccia purportedly was explaining or describing in the offered statements, and we find no support for such an assertion. M. R. Evid. 804(b)(3) allows for the admission of a hearsay statement that is against the interest of the declarant. Importantly, Rule 804(b)(3)'s exception applies only to declarants who are unavailable to testify.

---

[4] Carroccia apparently refused to sign an affidavit prepared by Lindsay's counsel.

Lindsay fails to allege that Carroccia was unavailable as that term is used in Rule 804.[5] We therefore conclude that neither M. R. Evid. 803(1) nor 804(b)(3) allows consideration of Carroccia's alleged statements.

¶33   Next, Lindsay argues that statements recounted in Ms. Willson's affidavit that Agnew was prejudiced against Lindsay's claims also fall under the present sense impression exception of Rule 803(1) or are statements against interest under Rule 804(b)(3).  For the same reason as Carroccia's statements, these exceptions do not apply.

¶34   Finally, Lindsay's reliance on Agnew's and Carroccia's purported statements is not ground for a new trial, as she was aware of both jurors' experiences when they were seated. During *voir dire*, the following interaction took place between Lindsay's attorney and Agnew:

> MR. SWEENEY: This is a [w]ill dispute. Has anybody been involved in a situation like this either as a party in a law suit or is related to somebody or anything like that? . . .
>
> MR. AGNEW: It was when my father passed there was a lawsuit involving his stepchildren and my siblings and I and it was contentious and bitter and resolved to no one's great satisfaction.
>
> MR. SWEENEY: Yeah, I get you. Okay. And so, that's what this case is and do you think that anything about your past experience is going to either jade you or irritate you or essentially just make you not the right juror for this case because you don't think what's going on here is the right thing to be done.
>
> MR. AGNEW: I can't help but think that I would have strong feelings about some of the issues that will arise.

---

[5] Disqualification of his statements under Rule 606(b) did not render Carroccia "unavailable" as defined in Rule 804(a).

Although Agnew later stated that his mind was not made up because he did not know the particulars of the case, he then stated in regard to his past experience, "I had strong feelings at the time and I'm sure they will rise up." Despite Agnew's statements, Lindsay's attorneys chose not challenge Agnew for cause. Lindsay cannot now claim irregularity when she had this information before jury selection was completed.

¶35 As for Carroccia, when questioned by Mr. Sweeney the following colloquy occurred:

> MR. SWEENEY: When do you think is the, well let me ask you this, how often would you go visit [Horatio] at the ranch?
>
> MR. CARROCCIA: I think only twice is all I've ever been there.
>
> MR. SWEENEY: And when do you think the last time was?
>
> MR. CARROCCIA: I think it was just, I think it was the summer that he died, but maybe it was the summer before. I don't know. But he had had his stroke, yeah.

At a minimum, Lindsay's attorney should have been aware that Carroccia may have interacted with Horatio at a time critical to their claims in the case. Nonetheless, Sweeney did not follow up to inquire about Carroccia's impressions of Horatio, did not ask whether Carroccia would be impacted by the meeting, and did not challenge Carroccia for cause.

¶36 Finally, Lindsay also alleges that a new trial is warranted under § 25-11-102(1), MCA. Under subsection (1), a party is not allowed to use juror affidavits to prove irregularity in the proceedings. *Harry v. Elderkin*, 196 Mont. 1, 6, 637 P.2d 809, 812 (1981). Because the only evidence Lindsay presents is either a juror affidavit or

18

inadmissible hearsay, Lindsay has failed to present any admissible evidence to support her argument under § 25-11-102(1), MCA.

¶37 Considering the admissible evidence Lindsay has presented, we conclude that the District Court's deemed denial of her motion for a new trial was not an abuse of discretion.

¶38 *3. Whether the District Court correctly awarded attorney fees to both the Estate and Alison and properly calculated interest on those awards.*

¶39 Following trial, the District Court awarded attorney fees to the Estate in the amount of $428,659.00, and to Alison in the amount of $86,931.50. The District Court found both awards compelled by § 72-12-206, MCA. The court further awarded interest on the judgment under § 25-9-205, MCA. Lindsay challenges both the District Court's award of costs and fees to Alison and the court's calculation of interest on its award to the Estate.

*a. Award of attorney fees to Alison*

¶40 Montana law provides for the award of attorney fees in challenges to probate proceedings. Section 72-12-206, MCA provides:

> When the validity or probate of a will is contested through court action, the attorney fees and costs, as provided in 25-10-201, incurred in defending the validity or probate of the will must be paid by the party contesting the validity or probate of the will if the will in probate is confirmed. If the probate is revoked, costs, as provided in 25-10-201, but not attorney fees, must be paid by the party who resisted the revocation or out of the property of the decedent, as the court directs.

¶41 Lindsay argues that the District Court erred when it awarded costs and fees both to the Estate and to Alison. Assuming Alison is properly in the case to defend her own interest in the 2016 will, Lindsay argues, she cannot receive attorney fees under § 72-12-206, MCA, which allows for the awarding of fees "incurred in defending the validity or probate

19

of the will." If it is the case, as the District Court held, that Alison was defending the validity of the 2016 will, her interests were adequately represented by the Estate and she should not have been allowed to participate in the case in her individual capacity. In response, Alison argues that she defended the validity of the 2016 will because, had Lindsay been successful in her claims of undue influence, the will would have been invalidated.

¶42 The fee-shifting scheme created by § 72-12-206, MCA, was enacted long before Montana's adoption of the MUPC and is not a uniform provision. *In re Estate of Edwards*, 2017 MT 93, ¶ 87, 387 Mont. 274, 393 P.3d 639. The statute does not necessarily preclude a claim of attorney fees by a devisee of a will, but such an award is proper only when the devisee is defending the validity of that will. *See In re Estate of Edwards*, ¶ 88. In this case, because the personal representative vigorously and adequately defended the 2016 will's validity and Alison's participation was not required to make that defense, we conclude that § 72-12-206, MCA, does not support an award of fees.

¶43 As described above, the District Court allowed Alison to participate as a party to defend her own interests and to respond to Lindsay's allegations against her. Neither Alison nor the Estate argues that the Estate's defense of the will was insufficient without Alison's participation. The record supports a conclusion that Alison was defending her own interest in the 2016 will and is therefore not entitled to an award of fees under § 72-12-206, MCA. We agree with Lindsay that it would be incongruent to award Alison fees for defending the interest of the Estate when Cameron already was defending those

interests and the court allowed Alison to participate so she could defend her own interests. The District Court erred in awarding costs and fees to Alison under § 72-12-206, MCA.

*b. Interest rate*

¶44 The applicable interest rate to be applied to an award of attorney fees is governed by § 25-9-205, MCA, which in relevant part reads:

> (1)(a) . . . interest is payable on judgments recovered in the courts of this state and on the cost incurred to obtain or enforce a judgment at a rate equal to the rate for bank prime loans published by the federal reserve system in its statistical release H.15 Selected Interest Rates or in any publication that may supersede it on the day judgment is entered, plus 3%. The interest may not be compounded.
>
> (b) The rate for bank prime loans established in subsection (1)(a) must be set as of January 1 of each year and remain in effect until December 31 of each year.

¶45 When interpreting a statute, a court's role is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Where a statutory provision contains multiple sections or particulars, it is the role of the court, if possible, to adopt an interpretation giving effect to all. Section 1-2-101, MCA.

¶46 Subsections 1(a) and (b) were added to § 25-9-205, MCA, in the 2017 regular session of the Montana Legislature. 2017 Mont. Laws ch. 446, § 1. Reading §§ (1)(a) and (b) together, the District Court determined that the proper rate of interest in each case is 3% above the published bank prime rate in effect on the day of judgment. Subsection 1(b), the District Court reasoned, then requires a recalculation of the interest rate on January 1 of each year, resetting the rate in a case at 3% above the published bank prime rate in effect

21

on that date. The result of the District Court's interpretation of § 25-9-205, MCA, is that the interest rate on all judgments accruing interest must reset on January 1 of every year.

¶47 The language of § 25-9-205, MCA, leads us to conclude that the District Court erred in its calculation of the applicable interest rate. As the District Court correctly noted, § 1(a) of the statute fixes the rate of applicable interest as 3% above the published bank prime rate in effect on the date judgment is entered. We disagree with the District Court, however, as to the effect of § 1(b). Section 1(b) does not modify the interest rate of an existing judgment, but requires that applicable rates be calculated on January 1 of each year and applied to judgments entered during that calendar year. The statute does not support a conclusion that a single judgment have fluctuating interest rates from year to year while it remains unpaid. Instead, the statute provides a scheme under which a judgment has one applicable interest rate, determined by the date of the entry of judgment. Subsection (1)(b) simply makes clear that the calendar year determines the rate applicable under (1)(a) at the time judgment is entered.

¶48 Accordingly, the appropriate rate of interest in this case is 3% above the federal bank prime rate as of January 1, 2022. On that date, the federal bank prime rate was 3.25% and the applicable post-judgment interest rate in this matter is 6.25%.

**CONCLUSION**

¶49 The District Court acted within its discretion when it denied Lindsay's motion to strike Alison's response and Lindsay's motion for a new trial. We therefore affirm the court's judgment on the jury verdict. We reverse the District Court's award of attorney

22

fees and costs to Alison and its calculation of interest on the award of attorney fees and costs to the Estate. The case is remanded for entry of final judgment consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE